Christopher A. Seeger (Pro Hac Vice)
cseeger@seegerweiss.com
Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029

David M. Arbogast (SBN 167517)
darbogast@law111.com
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
ARBOGAST & BERNS, LLP
6303 Owensmouth Ave. 10th Floor
Woodland Hills, CA 91367
Telephone: (818) 961-2000
Facsimile: (818) 936-0232

Attorneys for Plaintiff, Josefina Quezada on behalf of herself and all others similarly situated.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

JOSEFINA QUEZADA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

LOAN CENTER OF CALIFORNIA, INCORPORATED, EMC MORTGAGE CORPORATION, STRUCTURED ASSET MORTGAGE INVESTMENTS II, INC., BANK OF NEW YORK MELLON CORPORATION; and DOES 1 through 10 inclusive,

Defendants.

Case No. 2:08-cv-00177-WBS-(KJM)

CLASS ACTION

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Hearing Date:     December 7, 2009
Judge:              Hon. William B. Shubb

Trial date not yet set

**Table of Contents**

I.      INTRODUCTION 1

II.     STATEMENT OF FACTS                                                                    4

        A.      Plaintiff's Allegations ............................................................4

        B.      Defendants' Uniform Loan Documents ...................................... 6

                1.      The Loan Contracts ("Notes") ....................................6

                2.      The Truth-In-Lending Disclosure Statements .................................7

                3.      The Loan Program Disclosures ................................8

                4.      The Prepayment Penalty Riders..................................9

III.    ARGUMENT 9

        A.      Applicable Standard ...............................................................9

        B.      This Case Is Appropriate for Class Treatment .........................11

        C.      The Proposed Class Satisfies Rule 23(a)'s Requirements of
                Numerosity, Commonality, Typicality and Adequacy ...........................12

                1.      The Class Is Sufficiently Numerous. .............................. 12

                2.      Questions of Law and Fact Common to the Class
                        Exist. ....................................................12

                3.      Plaintiff's Claims are Typical of Those of the Class..................... 13

                4.      Plaintiff Will Fairly and Adequately Represent the
                        Class ..........................................................14

        D.      The Proposed Class Satisfies Rule 23(b)(3) Requirements of
                Predominance ........................................................15

                1.      Common Issues Predominate in Plaintiff's Fraudulent
                        Omissions Claim ........................................17

                        a.      Defendants' Duty to Disclose Material Facts
                                Will Be Proven By Evidence Common to the
                                Class ..........................................................18

   b. Materiality Will Be Proven By Evidence

    Common to the Class...........................................................19

   c. Reliance and Causation Are Also Common

    Questions Because a Class-Wide Presumption

    of Reliance Applies. ..........................................................20

   d. Common Issues Predominate as to Plaintiff's

    UCL Claims.......................................................................21

  E. A Class Action Is a Superior Means of Adjudicating These

  Claims .............................................................................................24

IV. CONCLUSION 26

## Table of Authorities

**Federal Cases**

Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972) ........................21

Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974) ................................................10

Amchem Prods., Inc. v Windsor, 521 U.S 591(1997) ..................................................9

Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001) .....................................................10

Baghdasarian v. Amazon.com, Inc., No. CV 05-8060 AG (CTx), 2009
    WL 2263581 (C.D. Cal. 2009) ...........................................................................11

Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975) ................................................. 18,25

Blarek v. Encore Receivable Mgmt., Inc., 244 F.R.D. 525 (E.D. Wis.
    2007) ...............................................................................................................25

Dukes v. Wal-Mart, Inc., 509 F.3d 1168 (9th Cir. 2007) .......................................10, 12

Garrison v. Asotin County, 251 F.R.D. 566 (E.D. Wash. 2008)..................................12

Gonzales v. Arrow Fin. Servs. LLC, 489 F. Supp. 2d 1140 (S.D. Cal.
    2007) ...............................................................................................................10

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998) ....................................12, 14

Hanon v. Dataproducts Corp., 976 F2d 497 (9th Cir. 1992) .......................................13

Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964) .................18

Hawaii v. Standard Oil Co. of Cal., 405 U.S. 251 (1972) ...........................................10

Heighley v. J. C. Penney Life Ins. Co., 257 F. Supp. 2d 1241 (C.D. Cal.
    2003) ...............................................................................................................22

Herrod v. First Republic Mortgage. Corp., 625 S.E.2d 373 (W. Va. 2005)...................4

In re Cooper Companies Inc. Secs. Litig., 254 F.R.D. 628 (C.D. Cal.
    2009) ...............................................................................................................15

In re First Alliance Mortgage Co., 471 F.3d 977 (9th Cir. 2006) ................................18

In re Graphics Processing Units Antitrust Litig., 253 F.R.D. 478 (N.D.
    Cal. 2008) ........................................................................................................15

In re McDonnell Douglas Corp. Secs. Litig., 98 F.R.D. 613 (E.D. Mo.
    1982) ...............................................................................................................26

In re THQ, Inc. Secs. Litig. 2002 WL 1832145 (C.D. Cal. 2002) ...............................12

In re Unioil Secs. Litig., 107 F.R.D. 615 (C.D. Cal. 1985)..........................................15

Jordan v. L.A. County, 669 F.2d 1311 (9th Cir. 1982), 459 U.S. 810 (1982) ...........................................................................................12, 13

Lozano v. AT&T Wireless Servs., 504 F.3d 718 (9th Cir. 2007) ............................. 16

McCabe v. Crawford & Co., 210 F.R.D. 631 (N.D. Ill. 2002)................................25

McPhail v. First Command Fin. Planning, Inc., 247 F.R.D. 598 (S.D. Cal. 2007) ...........................................................................................................18

Moeller v. Taco Bell Corp., 220 F.R.D. 604 (N.D. Cal. 2004) ............................. 12

Molski v. Gleich, 318 F.3d 937 (9th Cir. 2003) ..................................................14

Moore v. Hughes Helicopters, Inc., 708 F.2d 475 (9th Cir. 1983)...........................4, 10

Mortimore v. FDIC, 197 F.R.D. 432 (W.D. Wash. 2000)....................................16

Olson v. Tesoro Refining and Mktg., No. C06-1311RSL, 2007 WL 2703053 (W.D. Wash. 2007)..........................................................................16

Philips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) ....................................26

Plascencia v. Lending 1st Mortgage, No. 07 CV 04485 CW, 2009 WL 2569732 (N.D. Cal. 2009) ...........................................................................passim

Quezada v. Loan Center of Cal., No. 08-177 WBS KJM, 2008 WL 5100241 (E.D. Cal. 2008)..............................................................................22

Schwartz v. Harp, 108 F.R.D. 279 (C.D. Cal.1985)...........................................10

Short v. Wells Fargo, 401 F. Supp. 2d 549 (S.D. W.Va. 2005) .................................4

Staton v. Boeing, 327 F.3d 938 (9th Cir. 2003) ................................................14

Vallies v. Sky Bank, 432 F.3d 493 (3d Cir. 2006) ...........................................23

Van Colla v. County of Ventura, 189 F.R.D. 583 (C.D. Cal. 1999) .........................10

W. States Wholesale v. Synthetic Indus., 206 F.R.D. 271 (C.D. Cal. 2002) ...........4, 10

Wamboldt v. Safety-Kleen Sys., Inc., No. C 07-0884, 2007 WL 2409200 (N.D. Cal. 2007) ...........................................................................12

Yokoyama v. Midland Nat'l Life Ins. Co, No. 07-16825, 2009 WL 2634770 (9th Cir. 2009) ................................................................................3, 16, 23

**State Cases**

Berryman v. Merit Prop. Mgmt., 152 Cal.App.4th 1544 (2007)................................. 22

Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC, 162 Cal.App.4th 858, 76 Cal.Rptr.3d 325 (2008) ....................................................17

Day v. AT&T Corp., 63 Cal.App.4th 325, 331 Cal.Rptr. 55 (1998)....................19, 22

Fletcher v. Sec. Pac. Nat'l Bank, 23 Cal.3d 442, 153 Cal.Rptr. 28 (1979)...................23

In re Tobacco II Cases, 46 Cal.4th 298, 207 P.3d 20 (2009) ...........................11, 23, 24

Lazar v. Superior Court, 12 Cal.4th 631 (1996) ...............................................17

Lewis v. Robinson Ford Sales, Inc., 156 Cal.App.4th 359,
     67 Cal.Rptr.3d 347 (2007) .................................................................26

LiMandri v. Judkins, 52 Cal.App.4th 326, 60 Cal.Rptr. 2d 539 (1997) ......................19

Mass. Mut. Life Ins. Co. v. Superior Court, 97 Cal.App.4th 1282 (2002)..............19, 21

Occidental Land, Inc. v. Superior Court, 18 Cal.3d 355,
     134 Cal.Rptr. 388 (1976) ...................................................................21

Schnall v. Hertz Corp., 78 Cal.App. 1144 (2000) ...........................................21

Small v. Fritz Cos., 30 Cal.4th 167 (2003) ..................................................... 17

Vasquez v. Superior Court, 484 P.2d 964 (1974) .............................................21

Vega v. Jones, Day, Reavis & Pogue, 121 Cal.App.4th 282, 17
     Cal.Rptr.3d 26 (2004) .......................................................................19

**Statutes**

15 U.S.C. §§ 1604 et. seq ........................................................................5

Cal. Bus. & Prof. Code §17200, et. seq ...................................................... 21

Cal. Civ. Code §§ 1916.7............................................................................5

**Rules**

12 C.F.R. § 226.19 ...................................................................................8

Fed. R. Civ. P. 23 ...........................................................................passim

# I.    INTRODUCTION

This class action arises out of Defendants' uniform set of loan documents that failed to disclose material information about the unique risks posed by Defendants' Option Adjustable Rate Mortgage Loans ("Option ARM loans").  While the monthly payments specified in the loan documents were based on very low artificial teaser rates that remained in effect only 30 days, the loans themselves were designed to result in negative amortization.   Neither of these facts were clearly and specifically disclosed to borrowers.

More specifically, if borrowers made the payments in accordance with the schedule specified in the documents, the principal balance due on their loans would inevitably increase with each payment, stripping away their equity After three years, homeowner would actually owe more money than at the outset of the loan with less time to repay it.  Even worse, at that time, the loans would reset into higher monthly payments.  If homeowners wished to refinance to avoid the higher payments,[1] they would find it difficult, if not impossible, to refinance unless the increase in loan principal was matched by an increase in the home's value.

Defendant Loan Center of California ("Loan Center") (now defunct) sold Option ARM loans to homeowners from its headquarters in Suisun City, California, and then packaged them to assignees to bundle and securitize them in the secondary market. Defendant EMC Mortgage Corporation ("EMC") purchased approximately 182 of these loans from Loan Center shortly after their origination and thereafter serviced

---

[1] If class members tried to refinance in less th an three years, they would have to satisfy a stiff prepayment penalty.

them.  EMC then bundled, securitized and sold them to Defendants Structured Asset Mortgage Investments ("SAMI"), and Bank of New York Mellon ("BNYM") (collectively, with EMC, "the EMC Defendants").  Defendants realized profits at every step along the way from loan origination to securitization to servicing.  But while Defendants profited, their borrowers lost.  Negative amortization stripped them of the equity in their homes, and, in many cases, has actually resulted in foreclosure or threatens them with foreclosure.

Although the devastation caused by these loans is widespread, it can be remedied in a single proceeding.  Class action treatment suits this case perfectly because each class member's claims can be decided by reviewing the uniform disclosures in and omissions from the loan documents.  Because liability is discernible on the face of the loan documents, the commonality of these documents easily predominates over any individual issues.

Just last month, in a case involving virtually the identical Option ARM loans, the Northern District of California certified a class of borrowers because each Class member's claims arise from uniform loan documents that allegedly failed to disclose material facts.  Plascencia v. Lending 1st Mortgage, No. 07 CV 04485 CW, __ F.R.D. __, 2009 WL 2569732 (N.D. Cal. Aug. 21, 2009) (Wilkins, J.).  Accordingly, the court certified a class under Federal Rule of Civil Procedure 23(b)(3) for the same causes of action for which Plaintiff seeks certification here:  common law fraud and claims under California's Unfair Competition Law (UCL), Cal. Bus. & Prof.Code § 17200 et seq.

Just as in Plascencia, common issues predominate over any possible individual issues because each Class member's claims arise from uniform loan documents. Indeed, any counter argument for the necessity of an individual analysis of the

circumstances surrounding each transaction was recently rejected by the Ninth Circuit, in a decision issued just one week after <u>Plascencia</u>  <u>Yokoyama v. Midland Nat'l Life Ins. Co</u>, No. 07-16825, __ F.3d ___, 2009 WL 2634770 (9th Cir. Aug. 28, 2009).  As the <u>Yokoyama</u> court explained:

> Plaintiffs base their lawsuit onl      y on what [Defendant]      did not disclose to them in its form   s. *The jury will not have to determine whether each plaintiff subjectively relied on the omissions, but will instead have to determine only whether those omissions were likely to deceive a reasonable person. This does not involve an individualized inquiry.*
>
> 2009 WL 2634770, at *5 (emphasis added).

So, too, in this case the overriding common question will be whether the omissions, including those about negative amortization were material and likely to deceive any reasonable borrower.

Accordingly, Plaintiff seeks to certify, under Federal Rule of Civil Procedure 23(b)(3), the following class of Loan Center Option ARM loan borrowers :

> All individuals in the United States of America who, between  January 24, 2004  and the date that notice is mailed to the Class, obtained an Option ARM loan originated by LOAN CENTER OF CALIFORNIA, INC. with the following characteristics:
>
> (i)     The numerical interest rate listed on page one of the Promissory Note is 3.0% or less;
>
> (ii)     The Note uses the term "may" instead of "will or shall" change when describing an increase of the listed numerical rate.  <u>E.g</u>: "The interest rate I will pay may change";
>
> (iii)     The margin amount added to the index for the loan is equal to or greater than 1.75%;

(iv)    The promissory note does not contain any statement that paying the amount listed as the "initial monthly payment" will result in negative amortization after the first interest rate change date.

Excluded from the Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives.

## II.    STATEMENT OF FACTS

A court may make some inquiry into the facts for purposes of determining if the commonality and typicality requirements of Rule 23 are met, but a decision on the merits at the class certification stage is improper.  Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983); accord Plascencia, 2009 WL 2569732, at *4. Rather, the substantive allegations of the plaintiff's complaint must be accepted as true.  W. States Wholesale v. Synthetic Indus., 206 F.R.D. 271, 274 (C.D. Cal. 2002).

### A.    Plaintiff's Allegations

Plaintiff seeks to represent a class of consumers who entered into Option ARM mortgages with Defendants.[2]  Plaintiff's Third Amended Complaint ("TAC"), ¶¶ 2,

_____

[2]  EMC purchased or is otherwise an assignee of Plaintiff's loan procured through  TAC ¶ 4. See  Declaration of Jonat han Shub ("Sh ub Decl."), Ex. 6.  SAMI and Mellon presently own or owned the  loans at issue. See  id. ¶¶ 5-6. Plaintiffs assert that these entities are liable, along with LLC, because by  participating in the purchase and/or sale of the Option ARM loans, these entities were    acting in concert with Lo an Center and aided and abetted the  wrongful conduct.  See Quezada v. Loan Center of Cal. , No. 08-177 WBS KJM, 2008 WL 5100241, at  *6 (E.D. Cal. Nov. 26,  2008) Moreover, courts have found that originators and their lende  rs were operating join tly in  a manner that imposed liability on all of the defendants.  In re First Alliance Mortgage Co. , 471 F.3d 977, 992 (9th Cir. 2006);  Herrod v. First Republic Mortgage. Corp. , 625 S.E.2d 373, 384 (W. Va. 2005) (finding civil conspiracy in securitized loan context); Short v. Wells Fargo, 401 F. Supp. 2d 549, 564 (S.D. W.Va.  2005) (pooling and se rvicing agreement sufficient for joint-venture liability in context of a securitized loan).

1   23, 26.  Defendants' loan documents consistently failed to disclose material facts to the

2   borrower.  TAC ¶ 25.

3       The Truth-In- Lending Act ("TILA") requires clear disclosure of key terms of

4   the lending arrangement and all costs.  15 U.S.C. §§ 1604 et. seq.[3]  California law

5   requires that a lender make disclosures in a clear and conspicuous manner. Cal. Civ.

6   Code §§ 1916.7, 2971.  Defendants' documents did not meet these requirements.

7   Instead, they omitted critical facts.

8       Furthermore, the loan documents failed to disclose that the payments they

9   specified would not even satisfy the interest owed for the first three (3) years.  See

10  TAC ¶ ¶ 30-35.  As a result, interest charges were added to principal each month in

11  ever-increasing increments.  Id.  Plaintiff's loan balance grew and her home equity

12  shrunk.  By the time that the Defendants finally sent Plaintiff a statement showing how

13  they were applying her payments, she was locked into her loan which included harsh

14  prepayment penalties.  Since these prepayment penalties remained in effect for three

15  years, the borrower's right to refinance was effectively nullified by the equity lost after

16  three years of negative amortization.  See TAC ¶ 32; Shub Decl., Ex. 2.

17      Therefore, Plaintiff has brought this civil action, seeking compensatory,

18  consequential, statutory, and punitive damages.

19  / / /

20  / / /

21

22  _____

23  [3] Plaintiff is not seeking to certify a class under TILA, However, the TILA violations at issue may  serve as one of the bases for cer    tification of Plaintiff's UCL clai  m.  See Quezada, 2008 WL 5100241, at *5-*6.

24

**B.    Defendants' Uniform Loan Documents**

     **1.    The Loan Contracts ("Notes")**

Each of the Adjustable Rate Notes ("promissory notes" or "loan contracts") used by Defendants during the relevant time period contains the same statements and omissions

- Despite the fact that negative am ortization woul d inevitabl y occur, t he loan contracts expressly stated that  the monthl y payment would am ortize both principal and interest: "*I will pay principal and interest by making a payment every month;.*" "BORROWERS' FAILURE TO PAY AS REQUIRED . . .  The amount of the charge will be 5.00 % of *my overdue payment of principal and interest*.") Se̲e̲  Shub Decl., Ex. 1, ¶ 3(A     ) (emphasis added ).

- That the monthly payment would am ortize both principal and interest: "*I will pay principal and interest by making a payment every month;.*" "BORROWERS' FAILURE TO PAY AS  REQUIRED . . .  The amo unt of the cha rge will be 5.00 % of   *my overdue payment of principal and interest*.") Se̲e̲ Shub Decl., Ex. 1, ¶ 3(A) (emphasis added).

- That the monthly payments could be su fficient to pay all the  interest that accrued:  "my monthly payment ***could be less or greater than*** the amount of the interest owed each month."  I̲d̲. at ¶ 5(C) (emphasis added);

- That the low "teaser" rate could be in effect for a year or longer: "Interest will be charged on unpaid Principal until the full am ount of Principal has been paid.  I will pay interest at a yearly rate of 1.750%.  The interest rate

I will pay **may** change in accordance wit h Section 4 of this Note." <u>Id</u> . at

¶ 2 (emphasis added)

<u>See</u> Shub Decl., Ex. 2.

Each of these statements omitted the critical fact that negative amortization was certain to occur even if borrowers made their scheduled payments, and that with each payment, the loan balance would only increase, and the borrowers would lose equity in their homes. The materiality of these omissions, and their legal consequences, are the same for all Class members.

## 2.      The Truth-In-Lending Disclosure Statements

The Truth-in-Lending Disclosure Statement ("TILDS") is a mandated disclosure intended to provide consumers with material information about the loan.

As with the loan contracts, all versions of the Defendants' TILDS contained identical language.  Each contained an annual percentage rate ("APR") derived from the actual interest rate for the loan. <u>See</u> Shub Decl., Ex. 3 (APR listed as 7.922%).

However, the TILDS did not disclose the fact that the monthly payments it specified bore no relation to the APR listed therein. <u>See id</u>.  The scheduled payment amounts were based instead upon the much lower "teaser" interest rate between 1-3%. <u>See</u> Shub Decl., Ex. 2.  This teaser rate applied, at the most, for only the first 30 days of the loan.  Although the interest rate rose almost immediately, the monthly payment did not.   the first month the payment specified in the schedule could not even cover all the interest accruing on the loans**,** much less amortize any principal. Negative amortization was certain to occur.  <u>See</u> TAC ¶ 31; Shub Decl., Ex. 4.

/ / /

/ / /

### 3. The Loan Program Disclosures

Defendants' loan program disclosure[4] was a standardized form[5] called "Adjustable Rate Rider" or "Program Disclosure" that Defendants provided to all Class members.

Each Program Disclosure at issue obfuscates the truth about negative amortization by stating only that, "[t]he interest rate [the borrower] will pay **may** change...", when in fact, the initial rate *was* guaranteed to increase substantially after only one month because it was so far below the combined index plus margin. See Shub Decl., Ex. 4 (Adjustable Rate Rider). (emphasis added).

At the same time, each version of the loan disclosures also disguised the certainty of negative amortization as a mere possibility by stating:

> "Since my payment amount changes less frequently than the interest rate and since the m onthly payment is s ubject to [payment lim itations] my monthly payment ***could*** be less or greater than t he amount of the interest portion of the m onthly payment that would be sufficient t o repay the unpaid pri ncipal I owe at the m onthly payment date in full on t he Maturity Date in substantially equal payments.

Id. at A.(G) (emphasis added).

Again, the materiality and legal consequences of these omissions are the same for all class members.

/ / /

---

[4] Pursuant to 12 C.F.R . § 226.19, terms for vari able rate loans m ust be made in Defendants' early disclosures, which De fendants set forth in a document entitled "Adjustable Rate Rider."

[5] While Defendants utilized virtually the sa me loan disclosure form s, there were immaterial variations from year to year. See Shub. Decl., Ex. 8.

1

### 4.    The Prepayment Penalty Riders.

2

Each of the Prepayment Penalty Riders that Defendants used during the relevant

3 time period imposed substantial penalties consisting of "an amount equal to the

4 payment of SIX (6) months' advance interest on the amount by which the total of my

5 prepayment(s) within that 12-month period exceeds TWENTY PERCENT (20.00%) of

6 the original principal amount of the loan for prepayments made within the first three

7 years." <u>See</u> Shub Decl., Ex. 2. This period of the prepayment penalty covered at least

8 the period during which the loan negatively amortized because borrowers were making

9 only a partial payment of interest.  Because of the Prepayment Penalty Riders,

10 borrowers were effectively locked into their loans.

11 ## III.    ARGUMENT

12 ### A.    Applicable Standard

13

A Plaintiff seeking to represent a class must demonstrate that it has met all four

14 threshold requirements of Rule 23(a) and at least one of the requirements of Rule

15 23(b).  Rule 23(a) states that a court may certify a class if: "(1) the class is so

16 numerous that joinder of all members is impracticable; 2) there are questions of law or

17 fact common to the class; 3) the claims and defenses of the representative parties are

18 typical of the claims or defenses of the class; and 4) the respective parties will fairly

19 and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In short, a class

20 must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

21 <u>Amchem Prods., Inc. v Windsor</u>, 521 U.S 591, 613 (1997).

22

Here, Plaintiff seeks to certify the proposed class under Rule 23(b)(3), which

23 requires a showing that (i) questions of law or fact predominate over individual

24

questions and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating of the controversy."  Fed. R. Civ. P. 23(b)(3).

A court may make some inquiry into the facts for purposes of determining if the commonality and typicality requirements of Rule 23 are met, but a decision on the merits at the class certification stage is improper.  Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983); accord Plascencia, 2009 WL 2569732, at *4.  Rather, the substantive allegations of the plaintiff's complaint must be accepted as true.  W. States Wholesale v. Synthetic Indus., 206 F.R.D. 271, 274 (C.D. Cal. 2002)

When making a class certification determination, a court should keep in mind the important public policies that class actions like this one promote.  Van Colla v. County of Ventura, 189 F.R.D. 583, 590 (C.D. Cal. 1999).  The first is to provide relief for ordinary citizens who are without the substantial resources necessary to pursue their claims Hawaii v. Standard Oil Co. of Cal., 405 U.S. 251, 266 (1972).  The second is to "promote efficiency and economy of litigation by consolidating numerous individual suits into a single suit."  Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553 (1974).

In light of these goals, Rule 23 provides district courts with broad discretion to determine whether a class should be certified.  See Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007); Armstrong v. Davis, 275 F.3d 849, 872 n.28 (9th Cir. 2001).  The requirements of Rule 23 "should be liberally construed," Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal.1985), and any doubt as to the propriety of certification should be resolved in favor of certifying the class.  Gonzales v. Arrow Fin. Servs. LLC, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007) ("[D]oubts regarding the propriety of class certification should be resolved in favor of certification.")

1    (citation and internal quotation marks omitted); <u>Baghdasarian v. Amazon.com, Inc.</u>,

2    No. CV 05-8060 AG (CTx), ___ F.R.D. ___, 2009 WL 2263581, at *2 (C.D. Cal. July

3    7, 2009) ("Any doubts a court has about class certification should be resolved in favor

4    of certification.").

5    **B.    This Case Is Appropriate for Class Treatment**

6    Class treatment is appropriate where, as here, a large group has been defrauded

7    by a common course of conduct based on uniform documents. In <u>Plascencia,</u> the

8    plaintiffs brought a class action against Lending 1st, the loan originator, and EMC,

9    who, as in the case here, was a subsequent purchaser and servicer of the same type of

10   Option ARM loans that are at at issue here.

11   In certifying the plaintiffs' fraudulent omissions and UCL claims, the <u>Plascencia</u>

12   court held that (1) the fraud claim arose from a common course of conduct and

13   common issues predominated; and (2) common issues predominated on the plaintiffs'

14   UCL claim and, in light of the California Supreme Court's decision in <u>In re Tobacco II</u>

15   <u>Cases,</u> 46 Cal.4th 298, 207 P.3d 20 (2009) ("<u>Tobacco II</u>"), the plaintiffs had made a

16   sufficient showing of reliance to serve as Class representatives.  2009 WL2569732, at

17   *8-*10.[6]

18   As in <u>Plascencia</u>, Plaintiff will be able to establish liability on behalf of the

19   Class through common proof of  uniform omissions.

20   _____

21   [6]  The court declined to certify the TILA cl aim only because the pl aintiffs' claim could
     not satisfy the Rule 23(a) t ypicality element in thei r own TILA claim was tim e-
22   barred.  <u>See</u> <u>Plascencia,</u> 2009 WL 2569732, at *6.  The c ourt explained, however, that
     because t he TILA clai m otherwise sat isfied the Rule 23 elements, it would allow
23   plaintiffs to proffer another class repres entative for purposes of certifying t  he TILA
     claim.  <u>Id.</u> at *8.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**C.    The Proposed Class Satisfies Rule 23(a)'s Requirements of**

**Numerosity, Commonality, Typicality and Adequacy**

**1.    The Class Is Sufficiently Numerous.**

A class must be "so numerous that joinder of all members is impracticable."
Fed. R. Civ. P. 23(a)(1).  The plaintiff need not allege that joining all class members
would be impossible, <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998),
nor must the plaintiff establish the precise number or identity of class members. <u>See</u>
<u>Dukes</u>, 222 F.R.D. at 144, <u>aff'd</u>, 509 F.3d 1168 (9th Cir. 2007); <u>Moeller v. Taco Bell</u>
<u>Corp.</u>, 220 F.R.D. 604, 608 (N.D. Cal. 2004).  There is no "bright-line" test for finding
that the numerosity element has been satisfied, but courts generally deem
approximately forty or more members to suffice.  <u>E.g.</u>, <u>Garrison v. Asotin County</u>, 251
F.R.D. 566, 569 (E.D. Wash.2008); <u>Wamboldt v. Safety-Kleen Sys., Inc.</u>, No. C 07-
0884, ___F.R.D.___, 2007 WL 2409200, at *11 (N.D. Cal. Aug. 21, 2007) (courts have
found that "numerosity is satisfied if the class comprises 40 or more members"); <u>see</u>
<u>also</u> <u>Jordan v. L.A. County</u>, 669 F.2d 1311, 1319 (9th Cir.) (class sizes of 39, 64, and
71 sufficient to satisfy numerosity requirement) (vacated on other grounds, 459 U.S.
810 (1982)).  Although the exact size of the Class in this case is unknown at present,
Plaintiff has identified at least 181 Loan Center loans serviced by Defendant EMC.
<u>See</u> Shub Decl., Ex 7.  The Class is therefore sufficiently numerous.

**2.    Questions of Law and Fact Common to the Class Exist.**

Rule 23(a)(2) requires that "there are questions of law or fact common to the
class."  Fed. R. Civ. P. 23(a)(2).  This provision is neither exacting nor difficult to
satisfy.  Indeed, just one significant common issue is enough to satisfy Rule 23(a) (2).
<u>In re THQ, Inc. Secs. Litig.</u> 2002 WL 1832145, at *11 (C.D. Cal. Mar. 22, 2002).

In finding that commonality was satisfied in a nearly identical case where the liability question focused on form Option ARM loan documents, the court in Plascencia explained: "Rule 23(a) only requires that there be *some* common issues of fact and law.  The class members' claims clearly have something in common: all class members purchased an Option ARM loans from [Defendant], and their claims are based on a common theory of liability."  2009 WL 2569732, at *5. (emphasis added).

This standard is easily satisfied here.  At least three core questions in this case are plainly common to all class members:

(1)     Whether the loan documents failed to disclose that the payment amounts specified in the Note and TILDS were insufficient to pay both principal and interest; and

(2)     Whether the loan documents failed to disclose that negative amortization was absolutely certain to occur if Plaintiff made payments in accordance with the payment schedule provided by Defendants; and

(3) Whether the omitted information was material so as to trigger liability under the UCL and common law fraud.

### 3.     Plaintiff's Claims are Typical of Those of the Class

Rule 23(a) (3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The named plaintiff's claims are typical if they stem from the same practice or course of conduct that forms the class claims and is based upon the same legal theory.  Hanon v. Dataproducts Corp., 976 F2d 497, 508 (9th Cir. 1992) (internal citations omitted); Jordan v. County of Los Angeles, 669 F.2d 1311, 1321 (9th Cir, 1982).

As the Ninth Circuit stated in <u>Hanlon</u>, "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." <u>Hanlon</u>, 150 F.3d at 1020.  Some degree of individuality is to be expected in all cases, but that does not necessarily defeat typicality.  See <u>Staton v. Boeing</u>, 327 F.3d 938, 957 (9th Cir. 2003).

In a case where the plaintiff's claims are all based on loans issued without proper disclosures, the claims are "reasonably co-extensive" with the absent class members. <u>Plascencia</u>, 2009 WL 2569732 at *6.

Here, Plaintiff applied for and obtained the same Option ARM loans as did absent Class members and her loan documents omitted the same information as those of absent Class members.  Any minor differences in the language used in some Class members' loan documents are immaterial. <u>Id</u>.  Thus, whether the loan documents satisfied TILA's disclosure requirements or whether they failed to disclose material terms are all issues that can and should be determined in the same way for the named Plaintiff as for all Class members.

### 4.    Plaintiff Will Fairly and Adequately Represent the Class

A Plaintiff seeking to represent a class must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Two questions must be resolved before adequacy can be determined:  whether the proposed representative plaintiff has conflicts of interest with the proposed class and whether the plaintiff is represented by qualified and competent counsel. <u>See</u> <u>Molski v. Gleich</u>, 318 F.3d 937, 955 (9th Cir. 2003); Hanlon, 150 F.3d at 1020.

There is considerable overlap between the typicality prerequisite of Rule 23(a)(3) and the adequate representation requirement of Rule 23(a)(4).  <u>In re Cooper</u>

Companies Inc. Secs. Litig., 254 F.R.D. 628, 635 (C.D. Cal. 2009) (citing In re Unioil Secs. Litig., 107 F.R.D. 615, 622 (C.D. Cal. 1985)). This is because a district court must "ensure that the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." In re Graphics Processing Units Antitrust Litig., 253 F.R.D. 478 (N.D. Cal. 2008).  If a named plaintiff's claims are not typical of those of absent class members, then she has no incentive to pursue claims vigorously on behalf of absent class members.  In the instant case, Plaintiff's claims are, as discussed above, typical of those of absent Class members.  Thus, she has every incentive to vigorously pursue the class claims.

The second question is also easily answered because Plaintiff's counsel have solid reputations for excellence in complex class litigation. The firms representing Plaintiff— Arbogast & Berns and Seeger Weiss LLP—have extensive experience in litigating class actions, including those alleging widespread consumer fraud, and have served as class counsel in numerous actions throughout the country.  See Shub Decl., Ex. 9. (firms' resumes detailing counsel's experience).  In fact, these two firms were recently appointed as class counsel by Judge Wilken in the Plascencia matter.  Therefore, the proposed Class would be adequately represented.

**D.    The Proposed Class Satisfies Rule 23(b)(3) Requirements of Predominance**

Because of the nature of Plaintiff's claims, the uniformity of Defendants' statements and omissions, and the remedies that Defendants' violations require, Plaintiff moves the Court to certify a class under Rule 23 (b)(3) which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other

1  available methods for the fair and efficient adjudication of the controversy."  Fed. R.

2  Civ. P. 23(b)(3).  Predominance does not demand that the common issues be identical

3  as long as there is an essential common factual link between all class members and the

4  defendant for which the law provides a remedy.  Yokoyama, 2009 WL 2634770 at *5.

5      A single common issue may often override multiple individual issues in a given

6  case. As one court explained:

7      "[T]he predominance requirement is not a numerical test that identifies every
       issue in the suit as suitable for either common or individual treatment and
8      determines whether common questions predominate by examining the resulting
       balance on the scale.  A single common issue may be the overriding one in the
9      litigation, despite the fact that the suit also entails numerous remaining
       individual questions."
10

11     Olson v. Tesoro Refining and Mktg., No. C06-1311RSL, 2007 WL 2703053, at

12  *6 (W.D. Wash. Sept. 12, 2007) (citing treastise).

13     A case like this, where the liability is determined from uniform documents, is

14  "particularly appropriate" for treatment as a class action.  Yokoyama, 2009 WL

15  2634770, at *5 (rejecting the argument that a third party's communications about

16  documents at issue rendered class certification inappropriate because liability was

17  premised on documents themselves); Mortimore v. FDIC, 197 F.R.D. 432, 438 (W.D.

18  Wash. 2000); see also Lozano v. AT&T Wireless Servs., 504 F.3d 718, 737 (9th Cir.

19  2007) (class certification appropriate where common fraudulent scheme was

20  perpetrated through use of standardized form contracts).

21     Examination of the specific causes of action for which certification is sought

22  shows that the Rule 23(b)(3) predominance is met here.

23  / / /

24  / / /

1

2

**1.      Common Issues Predominate in Plaintiff's Fraudulent Omissions Claim**

3

4

5

6

7

Plaintiff's fraud claim is based on omissions of material facts.  She alleges both that the loan documents neither disclosed that making the payments specified in the loan documents would result in negative amortization nor that the one-percent "teaser" interest rate would be replaced by a much higher rate after a very short period of time. TAC ¶ 30.

8

9

10

11

12

13

14

15

16

17

Under California law, the elements of Plaintiff's fraudulent omission claim are: (1) the defendant must have concealed or suppressed a material fact (2) the defendant must have been under a duty to disclose the fact to the plaintiff (3) the defendant must have intentionally concealed or suppressed the fact intending to defraud the plaintiff (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed fact and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.  <u>Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC</u>, 162 Cal.App.4th 858, 868, 76 Cal.Rptr.3d 325, 332 (2008); <u>See</u> <u>Lazar v. Superior Court</u>, 12 Cal.4th 631, 638, (1996); <u>Small v. Fritz Cos.</u>, 30 Cal.4th 167, 173 (2003).

18

19

20

21

22

23

Where, as here, a claim is based upon omissions in a uniform set of documents provided to all class members, proof of each of these elements will be common and will predominate over any individual issues.  In certifying a virtually identical claim for failure to disclose negative amortization, the <u>Plascencia</u> court ruled that class certification is especially appropriate where, as here, defendants "are alleged to have acted in a uniform way toward all class members, [. . .] by supplying class members

24

1    with loan documents that failed to state in clear language material terms of the loan."

2    2009 WL 2569732, at *9.

3         The <u>Plascencia</u> court relied heavily on the Ninth Circuit's opinion in <u>In re First</u>

4    <u>Alliance Mortgage Co.</u>, where the defendants, an originator and a subsequent

5    purchaser, engaged in predatory lending practices in originating and selling sub-prime

6    mortgage loans that failed to disclose numerous hidden fees and other material facts.

7    471 F.3d 977, 991-92 (9th Cir. 2006).  In upholding class certification, the <u>First</u>

8    <u>Alliance</u> court rejected the argument that "the misrepresentation at the heart of the

9    class-wide fraud finding must have been . . . repeated in a verbatim fashion to each

10   member of the class," explaining:

11             While some other courts have adopted som  ewhat different
               standards in identifying the de  gree of factual co  mmonality
12             required in the m isrepresentations to class m embers in order
               to hold a defendant liable for cl ass-wide fraud, this court has
13             followed an approach that fa  vors class treatm ent of fraud
               claims stemming from a "comm  on course of conduct." <u>See</u>
14             <u>Blackie v. Barrack</u>, 524 F.2d 891, 902 (9t    h Cir. 1975)
               ("Confronted with a class of  purchasers allegedly defrauded
15             over a period of t  ime by sim ilar m isrepresentations, courts
               have taken the common sense approach that t        he class i  s
16             united by a common i    nterest in determ ining whether a
               defendant's course of conduc    t is in its broa    d outlines
17             actionable, which is not defe    ated by sl ight differences in
               class members' positions"); <u>see  also</u> <u>Harris v. Palm Springs</u>
18             <u>Alpine Estates, Inc.</u>, 329 F.2d 909, 914 (9th Cir. 1964).

19   <u>Id</u>. at 990-91 (emphasis added); <u>accord</u> <u>McPhail v. First Command Fin. Planning, Inc.</u>,

20   247 F.R.D. 598, 614-15 (S.D. Cal. 2007).

21                   **a.      Defendants' Duty to Disclose Material Facts Will**

22                            **Be Proven By Evidence Common to the Class**

23        A duty to disclose arises when, among other circumstances, the defendant makes

24   partial representations while also suppressing some material facts. <u>LiMandri v.</u>

1   Judkins, 52 Cal.App.4th 326, 336, 60 Cal.Rptr. 2d 539, 543 (1997).  Here, proof of

2   Defendants' partial representations are plain on the face of the documents provided to

3   all Class members and, thus, will be established by common evidence, including

4   statements such as "**if** negative amortization occurs on your loan principal" and "The

5   interest rate I will pay **may** change"  in the loan documents.  (Emphasis added).  These

6   representations were, at best, half-truths that obscured the <u>certainty</u> that negative

7   amortization would occur, and, by doing so, created a duty to disclose.  See <u>Vega v.</u>

8   <u>Jones, Day, Reavis & Pogue</u>, 121 Cal.App.4th 282, 292, 17 Cal.Rptr.3d 26, 33 (2004)

9   ("Even where no duty to disclose would otherwise exist, where one does speak, he

10  must speak the whole truth to the end that he does not conceal any facts which

11  materially qualify those stated.") (citing cases; internal quotation marks omitted).

12      Because the issue of Defendants' duty to disclose will focus exclusively on

13  Defendants and, specifically, on the loan documents themselves, it is a question that

14  will be resolved by proof common to the entire Class.

15          **b.      Materiality Will Be Proven By Evidence Common**

16                  **to the Class.**

17      California courts have found that the question of materiality of omitted

18  information predominates for purposes of certifying a class.  See <u>Mass. Mut. Life Ins.</u>

19  <u>Co. v. Superior Court</u>, 97 Cal.App.4th 1282, 1294 (2002).  Here, Defendants'

20  documents uniformly failed to disclose that:  (i) the payment schedule would not pay

21  off the actual interest rate charged on the Note(s); and (ii) negative amortization would

22  occur and that the "principal balance" of the loans would then increase.  See TAC ¶ ¶

23  1, 31, 82; Shub Decl., Ex. 4.  These material omissions will also be proven by evidence

24  common to the Class.  See, <u>e.g.</u>, <u>Plascencia</u>, 2009 WL 2569732 at * 9 ("[A] jury may

1   find that the initial interest rate and negative amortization features of the loans were

2   material in the sense that a reasonable person would have wanted to know about them.

3   The jury thus may presume that class members would not have agreed to purchase

4   their loans if Defendants had clearly disclosed that the initial one percent rate was

5   ephemeral and that negative amortization was certain to occur if only the minimum

6   payments were made.").

7           c.      **Reliance and Causation Are Also Common**

8                   **Questions Because a Class-Wide Presumption of**

9                   **Reliance Applies.**

10          Although justifiable reliance is an element of Plaintiff's fraud claim, this does

11   not pose a barrier to certification because reliance "may be presumed in the case of a

12   material fraudulent omission."  <u>Plascencia</u>, 2009 WL 2569732 at * 9

13          A presumption of reliance by the Class applies here because, as the <u>Plascencia</u>

14   court observed, the claims in these cases involving Option ARM loans are based upon

15   Defendants' failure to disclose material facts to borrowers regarding the terms of their

16   loans.  <u>Id.</u> at *8 ("Plaintiffs' fraud claim is based on an omission rather than an

17   affirmative misrepresentation").

18    In       <u>Plascencia</u>, the defendants argued that the fraud claim should not be certified

19   because whether class members were aware of the undisclosed loan term, and would

20   have acted differently if they had known of the terms, would require an examination of

21   each class member's individual circumstances.  <u>Id.</u> at *9. The <u>Plascencia</u> court

22   squarely rejected this attempt to defeat certification, following both the United States

23   and California Supreme Courts precedent in concluding that reliance may be presumed

24   in these Option ARM loans cases where plaintiffs allege fraudulent omissions found

within in the actual loan documents:

> Reliance may be presumed in the case of a material fraudulent omission. As the Supreme Court has held, in cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." <u>Affiliated Ute Citizens of Utah v. United States</u>, 406 U.S. 128, 153 (1972). Rather, "[a]ll that is necessary is that the facts withheld be material," in the sense that a reasonable person "might have considered them important" in making his or her decision. <u>Id.</u> at 153-54. Similarly, the California Supreme Court has held that class certification is appropriate even where there may be individual issues of reliance because "it is not necessary to show reliance upon false representations by direct evidence." <u>Vasquez v. Superior Court</u>, 484 P.2d 964 (1974). Rather, "reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement which prompted the party defrauded to enter into the contract than his direct testimony to the same effect." <u>Id.</u> (internal quotation marks omitted).

Moreover, under California law, "an inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation." <u>Mass. Mut. Life</u>, 97 Cal.App.4th at 1293 (quoting <u>Occidental Land, Inc. v. Superior Court</u>, 18 Cal.3d 355, 363, 134 Cal.Rptr. 388, 556 (1976)); <u>See Vasquez</u>, 4 Cal.3d at 814, 484 P.2d at 973. That inference of reliance arises here because all Class members entered into the Option ARM loans after receipt of documents that failed to disclose material information about the certainty of negative amortization of the loans even if borrowers timely made their monthly payments.

### d. Common Issues Predominate as to Plaintiff's UCL Claims.

The UCL prohibits unfair, unlawful and fraudulent business activities. Cal. Bus. & Prof. Code §17200, <u>et</u>. <u>seq</u>. Each prong of the UCL is a separate and distinct theory of liability. <u>See Schnall v. Hertz Corp.</u>, 78 Cal.App. 1144 (2000).  The UCL

incorporates other laws, such as TILA, and treats violations of those laws as "unlawful" in assessing liability under the statute.  See Berryman v. Merit Prop. Mgmt., 152 Cal.App.4th 1544, 1554 (2007) (noting "[u]nder its  'unlawful' prong, the UCL borrows violations of other laws ... and makes those unlawful practices actionable under the UCL. ") (citation omitted).  See also, Quezada, 2008 WL 5100241, at *5-*6, Here, plaintiff clearly alleges TILA violations that may be adjudicated by reference to the loan documents provided to Plaintiff and members of the Class.  See TAC ¶ 124.

Plaintiff has also asserted claims under two other prongs of the UCL:  (1) unfair business practices or acts; and (2) fraudulent business practices or acts.  See TAC ¶ ¶ 147-168.  Plaintiff can demonstrate that both the "unfair" and the "fraudulent" business practices and acts of the Defendants are amenable to class-wide resolution.

An "unfair" practice under § 17200 is one whose harm to the victim outweighs its benefits.  Day v. AT&T Corp., 63 Cal.App.4th 325, 331,-32, Cal.Rptr. 55, 59-60 (1998).  Plaintiff alleges that Defendants uniformly omitted and failed to disclose material facts regarding Defendants' Option ARM loans in violation of the UCL. Because materiality is a common question of fact, the unfairness of failing to disclose a material fact it is equally common.  Likewise, proof of the harm caused by these practices will also be common to the Class.

Establishing a violation of the "fraudulent" prong of the UCL requires an objective finding only that the practices at issue are "likely to deceive" members of the public.  See Heighley v. J. C. Penney Life Ins. Co., 257 F. Supp. 2d 1241, 1259 (C.D. Cal. 2003). The UCL does not require any specific reliance by the consumer or proof that any individual consumer was actually deceived. Fletcher v. Sec. Pac. Nat'l Bank,

23 Cal.3d 442, 452, 153 Cal.Rptr. 28, 34-35 (1979).  The test is an objective one that depends on whether the defendant's conduct was "likely to deceive" a reasonable consumer and, therefore, is amenable to adjudication through generalized proof.

Moreover, individual inquiries into what a broker may have communicated to the borrower are irrelevant to the UCL claim. As the Ninth Circuit recently explained in reversing a district court's denial of class certification:

> Plaintiffs allege that [Defendant's] documentation deceptively represents that its annuities protect its clients from the risks of the stock market and that [Defendant] fails to include in its documentation facts necessary to inform prospective purchasers of the true risks, possible detriments, and unsuitability of [Defendant's] long-term annuities for seniors. The plaintiffs' complaint therefore makes clear that plaintiffs' claims rest on [Defendant's] own sales materials, not any representations made by specific brokers to the individual plaintiffs. Specifically, their allegations do not relate to what they were told by brokers; rather, their allegations relate to what information was absent from [Defendant's] brochures.

Yokoyama, 2009 WL 2634770, at *2.

This is precisely the situation here because Plaintiff's UCL claims rest solely on the loan documents and do not at all involve written or oral representations or statements by any third party.[7] Similarly, the UCL requires only that the named plaintiff, not all class members, demonstrate injury and causation.  See In re Tobacco II, 46 Cal. 4th at 324, 207 P.3d at 38 (named plaintiff representing UCL class need

_____

[7] Indeed, Defendants had a non-delegable duty to disclose all the material facts to the borrowers in the loan documents. Lenders cannot delegate this duty to mortgage brokers, nor can they rely on the brokers to disclose material facts omitted from the loan documents themselves. See, e.g., Vallies v. Sky Bank, 432 F.3d 493, 494 (3d Cir. 2006) ("TILA does not permit a creditor to delegate its disclosure responsibility but requires all pertinent disclosures to be made by a single creditor.").

only prove her own actual reliance and need not proved reliance by individual class members because there is no requirement in UCL cases that absent class members have standing).

Moreover, as was outlined in <u>Plascencia</u>, although Proposition 64 requires that the Plaintiff herself must demonstrate reliance on Defendants' omissions, the court in <u>Tobacco II</u> set out a liberal approach to this reliance inquiry:

> While a plaintiff m ust show that the misrepresentation was an immediate cause of the injury-produ cing conduct, the plaintiff need not demo nstrate it was the only cause . It is not necess ary that the plaintiff's reliance upon t he truth of the fraudulent m isrepresentation be the sole or even the predominant or decisive factor influencing his conduct. It is enough that the re presentation has pl ayed a substantial part, and so had been a substa ntial factor, in influe ncing his decision. Moreover, a presumption, or a t leas t an inference, of reliance arises wherever there is a showing that a misrepresentation was material. A misrepresentation i s judged t o be "m aterial" if a reasonable man would attach im portance to its existence or nonexist ence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obvi ously unim portant that the jury could not reasonably find that a reasonable man would have been influenced by it.

207 P.3d at 38 (internal quotation marks, alteration marks and citations omitted); <u>see also</u> <u>Plascencia</u>, 2009 WL 2569732 at * 10-11 (holding that, "[j]ust as the materiality of the interest rate and negative amortization terms permits a presumption of reliance in connection with the fraud claim, it also permits a presumption of reliance for the purposes of Proposition 64 standing.").

**E.    A Class Action Is a Superior Means of Adjudicating These Claims**

In addition, class treatment of Plaintiff's claims would be superior to a multitude of individual actions involving the same or similar facts and law. <u>See</u> Fed. R. Civ. P. 23(b)(3). As the <u>Plascencia</u> court held, "adjudicating class members' claims in a single

1  action would be superior to maintaining a multiplicity of individual actions involving

2  similar legal and factual issues." 2009 WL 2569732, at *11.  The <u>Plascencia</u> court also

3  found no reason why individual actions would be a preferable method of adjudicating

4  claims such as the ones at bar.  <u>Id</u>.

5      Moreover, absent class certification, many borrowers harmed by Defendants'

6  misconduct would likely never have their day in court because, as unsophisticated

7  consumers, they are probably not even aware of the violations of law that give rise to

8  these claims.  E.g., <u>Blarek v. Encore Receivable Mgmt., Inc.</u>, 244 F.R.D. 525, 530

9  (E.D. Wis. 2007) (even if individual members' damages were considered substantial,

10  "unsophisticated consumers" whom statute "was intended to protect [we]re unlikely to

11  be aware of their rights or be willing to subject themselves to the burdens of an

12  individual lawsuit"); <u>McCabe v. Crawford & Co.</u>, 210 F.R.D. 631, 645 (N.D. Ill. 2002)

13  ("A class action is the most efficient method of adjudicating the claims of numerous

14  class members who, largely unsophisticated and uninformed of their rights, might not

15  otherwise possess the initiative to commence an action on their own behalf.").

16      Nor can there be a genuine dispute that a class trial of these would be

17  manageable. The common wrong done to the Class can be cured by a common remedy

18  whereby Plaintiff and each Class member will calculate the difference between the

19  amount their present mortgage balance would be if their payments were properly

20  credited to both principal and interest in accordance with the terms of the note, and the

21  amount presently reflected on Defendants' books.  Although this calculation will result

22  in different amounts for Plaintiff and each Class member, such differences are

23  mechanical and do not defeat class certification.  <u>See</u>, <u>e.g.</u>, <u>Blackie v. Barrack</u>, 524

24  F.2d at 905 ("The amount of damages is invariably an individual question and does not

1    defeat class action treatment."); accord In re McDonnell Douglas Corp. Secs. Litig., 98

2    F.R.D. 613, 617 (E.D. Mo. 1982) ("The amount of damage is nearly always an

3    individual question and can usually be determined by the application of a mechanical

4    formula.") (citing cases); Lewis v. Robinson Ford Sales, Inc., 156 Cal.App.4th 359,

5    371, 67 Cal.Rptr.3d 347, 355 (2007).

6         Lastly, there is little question that adequate notice can be given to all Class

7    members.  Philips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985).  Here, because

8    Defendants possess the physical addresses of most Class members, there should be no

9    impediment to the furnishing of direct notice through first-class mail.  To the extent

10   that some Class members are no longer in their homes due to foreclosure or a

11   subsequent sale of their property, those members can be identified by Defendants from

12   their records or a search of public records. Publication notice could also be used to

13   reach such individuals.

14   **IV.   CONCLUSION**

15        For all of the foregoing reasons, the Court should certify the proposed Class.

16   Dated:  September 22, 2009        SEEGER                WEISS LLP

17                                                BY: /S/ _____
                                                 Jonathan Shub, Esq.
18                                               1515 Market Street, STE 1380
                                                 Philadephia, PA 19102
19                                               Tel. 215-564-2300
                                                 Fax. 215-851-8029
20
                                                 ARBOGAST & BERNS, LLP
21                                               David M. Arbogast, Esq.
                                                 Jeffrey K. Berns, Esq.
22                                               6303 Owensmouth Ave., 10th Fl.
                                                 Woodland Hills, California 91367
23                                               Telephone: 818/961.2000
                                                 Facsimile: 818/936.0232
24

Attorneys for Plaintiff Josefina
Quezeda

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24