Christopher A. Seeger (Pro Hac Vice)
cseeger@seegerweiss.com
Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029

David M. Arbogast (SBN 167517)
darbogast@law111.com
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
ARBOGAST & BERNS, LLP
6303 Owensmouth Ave. 10th Floor
Woodland Hills, CA 91367
Telephone: (818) 961-2000
Facsimile: (818) 936-0232

Attorneys for Plaintiff Josefina Quezada, individually, and behalf of all others
similarly situated.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEFINA QUEZADA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LOAN CENTER OF CALIFORNIA, INCORPORATED, EMC MORTGAGE CORPORATION, STRUCTURED ASSET MORTGAGE INVESTMENTS II, INC., BANK OF NEW YORK MELLON CORPORATION; and DOES 1 through 10 inclusive, <br><br> Defendants. <br> _____ <br> _____ | Case No.  2:08-cv-00177-WBS-(KJM) <br><br> CLASS ACTION <br><br> PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION <br><br> Judge: William B. Shubb <br> Courtroom: 5, 14th Floor <br> Hearing Date: December 7, 2009 |

# **Table of Contents**

I.     INTRODUCTION                                                                          1

II.    ARGUMENT                                                                              3

       A.   Plaintiff Has Identified an Ascertainable Class ........................................... 3

       B.   Plaintiff Can Demonstrate Reliance Under the UCL and
            Common Law Fraud.................................................................................. 5

            1.   Plaintiff Has Standing to Pursue Her UCL Claim ........................... 5

            2.   Plaintiff Will be Able to Demonstrate Actual
                 Reliance for Both Her UCL and Fraudulent
                 Omission Claims........................................................................ 7

            3.   Plaintiff's Claim is Typical and She is an Adequate
                 Class Representative ................................................................ 14

       C.   A Class-Wide Presumption or Inference of Reliance
            Applies to Plaintiff's Fraudulent Omission Claim..................................... 16

       D.   Proposition 64 Does Not Alter the UCL's "Likely to
            Deceive" Standard for Absent Class Members Under the
            UCL ....................................................................................................... 20

       E.   The Question of Defendants' Liability as to All Class
            Members Will Be Resolved by Reference to the
            Materially Uniform Loan Documents Used by
            Defendants.............................................................................................. 25

III.   CONCLUSION                                                                             27

1

## **Table of Authorities**

2

**Federal Cases**

3

Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128 (1972)........7, 17, 19

4

Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D. 586 (E.D.
Cal. 2008) ..........................................................................................3

5

6

Day v. AT&T Corp., 63 Cal. App. 4th 325 (1998) .................................22

7

Elliott v. ITT Corp., 150 F.R.D. 569 (N.D. Ill. 1992)...............................4

8

Gartin v. S&M NuTec LLC, 245 F.R.D. 429 (2007)...............................19

Gonzalez v. Ameriquest Mortgage Co., No. C 03-00405 JSW, 2004
WL 2472249 (N.D. Cal. Mar. 1, 2004) ........................................13

9

Hanon v. Dataprods., Corp., 976 F.2d 497 (9th Cir. 1992)......................6

10

11

HCM High Yield Oppty. Fund v. Skandinaviska Enskilda Banken
AB, No. 99-1350, 2001 WL 36186526 (S.D. Fla. Dec. 14,
2001) .............................................................................................9

12

13

In re First Alliance Mortgage Co., 471 F.3d 977 (9th Cir. 2006) ...........20

14

In re Pizza Time Theatre Secs. Litig., 112 F.R.D. 15 (N.D. Cal.
1986) .......................................................................................6, 15

15

16

Johnson v. Aronson Furniture Co., No. 96-C-117, 1998 WL 641342
(N.D. Ill. Sept. 11, 1998) ...........................................................14

17

Johnson v. Rohr-Ville Motors, Inc., 189 F.R.D. 363 (N.D. Ill. 1999)....15

18

Jordan v. Paul Financial, No. C 07-04496 SI, 2009 WL 192888 (N.D.
Cal. Jan. 27, 2009) ...............................................................17, 18

19

Learjet Corp. v. Spenlinhauer, 901 F.2d 198 (1st Cir. 1990)...................8

20

Martinez v. Freedom Mortgage Team, Inc., 527 F. Supp. 2d 827
(N.D. Ill. 2007) .........................................................................13

21

Mazur v. Ebay Inc., 257 F.R.D. 563 (N.D. Cal. 2009) ............................4

22

23

24

Mims v. Stewart Title Guaranty Co., 254 F.R.D. 482 (N.D. Tex. 2008) ............................................................................................. 4

O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311 (C.D. Cal. 1998) ...................... 3

Pettrey v. Enter. Title Agency, Inc., 241 F.R.D. 268 (N.D. Ohio 2006) ............................................................................................. 4

Plascencia v. Lending 1st Mortgage, No. 07 CV 04485 CW, __ F.R.D. __, 2009 WL 2569732 (N.D. Cal. 2009) .................................... passim

Poulos v. Caesars World, 379 F.3d 654 (9th Cir. 2004) ................................... 18, 19

Rankin v Rots, 220 F.R.D. 511 (E.D. Mich. 2004) ........................................... 15

Rodriguez v. Hayes, 578 F.3d 1032 (9th Cir. 2009) ......................................... 14

Surowitz v. Hilton Hotels, 383 U.S. 363 (1966) .............................................. 15

Vallies v. Sky Bank, 432 F.3d 493 (3d Cir. 1996) ............................................ 26

Vasquez v. Superior Court, 4 Cal. 3d 800 (1971) ............................................ 17

Yokoyama v. Midland Nat'l Life Ins. Co, __ F.3d ___, No. 07-16825, 2009 WL 2634770 (9th Cir. 2009) ................................................ passim

**State Cases**

Bank of the West v. Superior Court, 2 Cal. 4th 1254 (1992) ............................. 22

Barry v. Raskov, 232 Cal. App. 3d 447 (1991) ................................................ 26

Cohen v. DirectTV, 178 Cal. App. 4th 966, 2009 WL 3069116 (Cal. Ct. App. Sept. 28, 2009) ............................................................... 24

Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197 (1983) ...................................................................... 22

Fletcher v. Sec. Pac. Nat'l Bank, 23 Cal. 3d 442 (1976) ................................. 22

In re Tobacco II Cases, 46 Cal.4th 298, 207 P.3d 20 (2009) ........................... passim

Kasky v. Nike, Inc., 27 Cal. 4th 939 (2002) ................................................ 21, 24

Mirkin v. Wasserman, 5 Cal. 4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993) ........................................................................... 6, 8, 19

Moore v. Copp, 119 Cal. 429 (1897) ........................................................... 13

Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 99
    Cal. Rptr. 3d 768 (2009) ...................................................................... 23

Murphy v. BDO Seidman, LLP, 113 Cal. App. 4th 687, 6 Cal. Rptr.
    3d 770 (2003) ......................................................................................... 8

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................... 1

Cal. Civ. Code § 1625 ................................................................................ 26

Cal. Civ. Code § 1639 ................................................................................ 26

**Rules**

Fed. R. Civ. P. 23 ................................................................................. 1, 14

**Treatises**

*Restatement (Second) of Torts*, § 533 ......................................................... 8

1  **I.     INTRODUCTION**

2         In her opening brief, Plaintiff demonstrated that this is a paradigmatic case

3  for class treatment, as the basis for Defendants' liability arises out of a uniform set

4  of loan documents that failed to disclose material information about the unique

5  risks posed by Option Adjustable Rate Mortgage Loans ("Option ARM loans").

6  See Memorandum In Support of Plaintiff's Motion for Class Certification ("Pl.'s

7  Motion") (Doc. No. 83).  Plaintiff explained that the key terms at issue here –

8  monthly payments that were based on very low artificial teaser rates that remained

9  in effect only 30 days and which were designed to result in negative amortization

10  – were never clearly and specifically disclosed to Plaintiff and the members of the

11  proposed class using an identical set of loan papers across the class.

12         In opposition, Defendants make the very arguments that were squarely

13  rejected in Plascencia v. Lending 1st Mortgage, __ F.R.D. __, No. 07 CV 04485

14  CW, 2009 WL 2569732 (N.D. Cal. Aug. 21, 2009), where, under nearly identical

15  facts *involving the same subsequent purchasers* (EMC and its related entities), the

16  court certified the class for the same causes of action for which Plaintiff seeks

17  certification here:  common law fraud and claims under California's Unfair

18  Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.  Moreover,

19  that decision, coupled with the Ninth Circuit's recent ruling in Yokoyama v.

20  Midland Nat'l Life Ins. Co., __ F.3d ___, No. 07-16825, 2009 WL 2634770 (9th

21  Cir. Aug. 28, 2009), leaves little doubt that Plaintiff has met her burden under

22  Fed. R. Civ. P. 23(a) and 23(b)(3) for demonstrating the appropriateness of class

23  treatment for her claims.

24

Faced with a record clearly showing numerosity, typicality, adequacy and the predominance of common issues of law or fact, Defendants resort to a three-prong argument that relies on: 1) a misguided understanding of the meaning of an ascertainable class; 2) a summary judgment-type assault on Plaintiff's standing; 3) a misguided reading of relevant case law regarding the need for absent class members to prove individual reliance and causation where the theories of liability are based on a failure to disclose material terms in a set of uniform documents.

Despite the fact that Plaintiff's proposed class definition meets all the criteria of a class under Rule 23, Defendants argue that Plaintiff has failed to identify an ascertainable class. <u>See</u> Defendants' Opposition to Plaintiff's Motion for Class Certification ("Opp.") at 30-32 (Doc. No. 102).

Further, Defendants attack Quezada's standing and her status as the proposed class representative, claiming she cannot establish actual reliance and causation under either the UCL or the common law since she allegedly never read the loan documents. (Opp. at 17-18.)  The record, however, reveals that, although Plaintiff cannot read English, she did read and understand the numerical figures representing the amount borrowed and the fraudulent teaser interest rate, and that she relied on English-speaking individuals to translate the other material terms. Thus, Plaintiff has satisfied the standing requirements for her statutory and common law claims as well as the Rule 23 requirements for proceeding on behalf of the proposed class.

Defendants also argue that there is no proof that the loan documents were uniform across the class, and, even if they were, the Court needs to delve into the circumstances surrounding the origination of each class member's loan.  (Opp. at

22-27.)  Both assertions are wrong.  The documents produced in discovery – which Defendants do not contest – show that there were *no* material differences in any of 182 Option ARM loans at issue here.  Moreover, <u>Yokoyama</u> and <u>Plascencia</u> squarely reject the proposition that this Court needs to consider the individual facts surrounding the origination of each class member's loan where claims are based on material omissions in standardized documents.

Defendants' arguments against class certification fail, and the Court should grant Plaintiff's Motion for Class Certification.

**II.    ARGUMENT**

**A.    Plaintiff Has Identified an Ascertainable Class**

In her opening brief, Plaintiff presented a class definition that is precise, objective and ascertainable based on the defined set of criteria. (Pls. Motion at 12-13.)  Defendants' challenge to the ascertainability of the membership of the proposed Class is based on a misguided understanding of what the law requires.

The touchstone of ascertainability  is whether the class is objectively defined, so that it does not implicate the merits of the case or call for an evidentiary hearing  to determine class membership and whether it is administratively feasible to identity its members. <u>O'Connor v. Boeing N. Am., Inc.</u>, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  An adequate class definition specifies "a distinct group of plaintiffs whose members [can] be identified with particularity." <u>Campbell v. PricewaterhouseCoopers</u>, LLP, 253 F.R.D. 586, 593 (E.D. Cal. 2008).  The purpose of a class definition is to provide the court with objective criteria to discern the members of the class.  <u>Id.</u>; <u>see also</u> <u>O'Connor,</u>184 F.R.D. at 319.  While a "class definition should be precise, objective, and

1   presently ascertainable...the class need not be so ascertainable that every potential

2   member can be identified at the commencement of the action."  <u>Mazur v. Ebay</u>

3   <u>Inc</u>., 257 F.R.D. 563, 566 (N.D. Cal. 2009).

4        Contrary to Defendants' assertion, a loan fraud action such as this is a

5   prototypical example of a case where class membership can be ascertained

6   through a simple review of loan documents.  <u>See</u> <u>e.g.</u>, <u>Pettrey v. Enter. Title</u>

7   <u>Agency, Inc.</u>, 241 F.R.D. 268, 278 (N.D. Ohio 2006) (class membership

8   determined though examination of mortgage loan files); <u>Elliott v. ITT Corp.</u>, 150

9   F.R.D. 569, 575 (N.D. Ill. 1992) (class ascertainable where initial determination

10  of membership made by reviewing loan files).  The fact that the originating lender

11  may be defunct does <u>not </u>mean, as Defendants suggest, that class members cannot

12  be identified.  First, paper or electronic records of Defendant Loan Center of

13  California are undoubtedly available somewhere.  Banks are heavily-regulated

14  institutions; they are not "mom-and-pop" grocery stores that disappear without a

15  trace when they go out of business.  Second, class members could be identified

16  through the records of EMC and other subsequent purchasers of the Option ARM

17  loans originated by Loan Center of California, either through discovery taken

18  from Loan Center or from the named defendants in this action.  <u>See</u> <u>Mims v.</u>

19  <u>Stewart Title Guaranty Co.</u>, 254 F.R.D. 482, 486 (N.D. Tex. 2008) ("[P]otential

20  class members are readily identifiable from business records that are within

21  [defendant's] custody or available to it upon request. . . Accordingly, the class is

22  ascertainable from objective criteria, given a straightforward examination of a

23  series of documents that are readily available.").  Alternatively, it may be obtained

24

1 through third-party discovery of unnamed purchasers of those loans, or through

2 the Mortgage Electronic Registration System ("M.E.R.S.").

3      Finally, while Defendants argue against ascertainability by stating that

4 Plaintiff has not established that all of the loans sold to EMC contain the

5 prepayment penalty rider that she challenges, Opp. at 30-31, Defendants ignore

6 the fact that they produced six (6) exemplar Option ARM loan documents for

7 each relevant year, with customer information redacted.  See Plaintiff's Motion

8 for Class Certification, Shub Decl., Ex.8.[1] (Doc. No. 82).  These sample loan

9 documents demonstrate the uniformity of the Option ARM loan documents at

10 issue with only minor, non-substantive differences, including the prepayment loan

11 rider, from year to year.  Indeed, Defendants failed to produce any Option ARM

12 loan documents that would contradict Plaintiff's evidentiary showing of

13 uniformity.

14      Thus, Plaintiff currently has articulated an ascertainable class of 181

15 members whose loans originated through Loan Center and were bought, serviced

16 and securitized by Defendants.

17      **B.      Plaintiff Can Demonstrate Reliance Under the UCL and**

18      **Common Law Fraud**

19           1.   Plaintiff Has Standing to Pursue Her UCL Claim

20

21 _____

22 [1] Defendants' argument regarding Plaintiff's failure to establish numerosity under Rule 23(a)
is similarly contradicted by the evidence in the record that Defendants purchased 182 Option

23 ARM loans from Loan Center of California.  See Plaintiff's Motion for Class Certification,
Shub Decl., Ex. 7.

24

As an initial matter, Defendants' standing argument is inappropriate here and at best should only be taken up in the context of Defendant's pending motion for summary judgment.  Standing goes to the issue of whether Plaintiff may sustain <u>her</u> claim on the merits, which is a separate inquiry from whether her claims are susceptible to class treatment (<u>i.e.</u>, whether they can be resolved through common or generalized proof).  <u>See</u> <u>Hanon v. Dataprods., Corp.</u>, 976 F.2d 497, 509 (9th Cir. 1992) ('We emphasize that the defense of non-reliance is not a basis for denial of class certification"); <u>In re Pizza Time Theatre Secs. Litig.</u>, 112 F.R.D. 15, 22 (N.D. Cal. 1986) (rejecting defendant's argument that class representative's lack of reliance should be considered at class certification; lack of reliance is defense that goes to merits of case and cannot be considered at certification stage).

Further, Plaintiff has never disputed Defendants' statement of the law that, to have standing to assert her UCL and fraudulent omission claims, Plaintiff must allege (and prove at trial) that she relied on the fraudulent documents and that her injuries were casually connected to that reliance.  (Opp. at 12-13.)  <u>See</u> <u>In re Tobacco II Cases</u>, 46 Cal. 4th 298, 315, 326, 207 P.3d 20 (2009) (class representative plaintiff must allege and prove actual reliance on the misrepresentation.); <u>Mirkin v. Wasserman</u>, 5 Cal. 4th 1082, 1093, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993) (plaintiff must prove that, had the omitted information

1  been disclosed, he would have acted differently).  (Opp. at 13.)[2]  However,

2  Defendants' summary judgment-type standing argument – that Plaintiff cannot

3  prove actual reliance because she did not read the loan documents – is a red

4  herring because it is not an appropriate consideration for class certification.

5  Rather, it is intended to detract from what is actually at issue here:  Defendants'

6  clear lack of disclosure of material loan terms in a uniform set of loan documents.

7  Moreover, as Plaintiff explains infra, the record reveals that Plaintiff will be able

8  to prove reliance sufficient to establish standing under California law, as well as

9  meet the typicality and adequacy requirements of Rule 23 for both of her claims.

10            2.  Plaintiff Will be Able to Demonstrate Actual Reliance for Both

11                Her UCL and Fraudulent Omission Claims

12         Assuming, arguendo, that the issue of Plaintiff's reliance should be

13  considered in the context of this class certification motion, Ms. Quezeda is able to

14  establish this element for both her statutory and common law claims.  First,

15  Plaintiff's reliance may be presumed since her case is one grounded on material

16  fraudulent omissions.  In cases "involving primarily a failure to disclose, positive

17  proof of reliance is not a prerequisite to recovery."  Affiliated Ute Citizens of

18  _____

19  [2] Although Proposition 64 requires that the Plaintiff herself must demonstrate reliance on

20  Defendants' omissions, the court in Tobacco II set out a liberal approach to this reliance
   inquiry.  See Tobacco II, 46 Cal. 4th at 326. ("While a plaintiff must show that the

21  misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need
   not demonstrate it was the only cause. It is not necessary that the plaintiff's reliance upon the

22  truth of the fraudulent misrepresentation be the sole or even the predominant or decisive
   factor influencing his conduct.   It is enough that the representation has played a substantial
   part, and so had been a substantial factor, in influencing his decision.").  Moreover, Tobacco

23  II explained that a "presumption, or at least an inference or reliance arises wherever there is a
   showing that the misrepresentation is material."  Id. at 327.

24

1   <u>Utah v. United States</u>, 406 U.S. 128, 153 (1972).  Instead, Plaintiff need only

2   establish that the facts withheld were material, such that "a reasonable person

3   'might have considered them important in making his or her decision.'"  <u>Id.</u>

4      Second, even absent a presumption of reliance, the record demonstrates that

5   Plaintiff did rely on the documents in agreeing to the Option ARM loan at issue.

6   Defendants contend that Plaintiff cannot establish reliance because she did not

7   read the loan document due to her inability to read English. (Opp. at 16-18.)

8   However, Defendants erroneously equate "actual reliance" with "direct reliance."

9   Merely because Plaintiff does not have a command of the English language does

10  not mean, <u>a fortiori</u>, that she cannot establish actual reliance on the loan

11  documents. California law expressly recognizes that actual reliance may be

12  established indirectly when a defendant's written communication is conveyed by

13  a third party to the plaintiff.[3]  <u>See Mirkin</u>, 5 Cal.4th at 1049, 23Cal.Rptr.2d at 101,

14  858 P.2d at 568; <u>Murphy v. BDO Seidman, LLP</u>, 113 Cal. App. 4th 687, 702-03,

15  6 Cal. Rptr. 3d 770, 781 (2003) (following <u>Mirkin</u> and recognizing that plaintiff

16  investors properly alleged actual reliance, even though they did not read

17  fraudulent documents authored by defendant, because misrepresentation in the

18  documents was conveyed to plaintiffs by third party); <u>see also Learjet Corp. v.</u>

19  _____

20  [3] In recognizing the validity of the principle that actual reliance may be established through
    indirect communication, the <u>Mirkin</u> court relied on a principle from the *Restatement (Second)*

21  *of Torts*, section 533, which provides: "The maker of a fraudulent misrepresentation is subject
    to liability for pecuniary loss to another who acts in justifiable reliance upon it if the

22  misrepresentation, although not made directly to the other, is made to a third person and the
    maker intends or has reason to expect that its terms will be repeated or its substance

23  communicated to the other, and that it will influence his conduct in the transaction or type of
    transactions involved." <u>Mirkin</u>, 5 Cal. 4th at 1095.

24

1   Spenlinhauer, 901 F.2d 198, 200 (1st Cir. 1990) (sustaining claim for common

2   law fraudulent misrepresentation where plaintiff relied indirectly, through

3   statements of third person, on defendant's misrepresentations); HCM High Yield

4   Oppty. Fund v. Skandinaviska Enskilda Banken AB, No. 99-1350, 2001 WL

5   36186526, at *11 (S.D. Fla. Dec. 14, 2001) ("[P]laintiffs themselves do not need

6   to allege that they actually read the offering memorandum to plead reliance if

7   someone else acting on their behalf read it for them.").

8           Although Defendants attempt to distort Plaintiff's testimony by selectively

9   extracting certain portions of Plaintiff's deposition testimony, a fair reading of the

10  transcript reveals that Plaintiff did, in fact, read the material parts of the disclosure

11  that were numerical in nature (the fraudulent loan rate and the fraudulent loan

12  terms), and relied on others who read the documents to describe to her the

13  additional material terms:

14                  Q.   I know you said that you don't read English, but I just want to

15                  ask:  You do recall reading, for instance, like the date.  You saw the

16                  date?

17                  A.   Yes.

18                  Q.   And you understand the date when you saw it?

19                  A.   Yes.

20                  Q.   And you remember seeing the amount that you borrowed, the

21                  $252,000?

22                  A.   Yes.

23                  Q.   And you're pointing to it now.  Okay.  And you understood that

24                  there was an interest rate written there at 1.75 percent?

1    A. Yes.

2    Q. So you understood that that was what -- the interest rate that you

3 were being charged?

4    A. Yes.

5 (Quezada Deposition, 61:12-62:3, attached as Ex. A to the Declaration of

6 Jonathan Shub in Support of Plaintiff's Reply for Motion for Class Certification

7 ("Shub Reply Decl.")).

8    Q. And then in Exhibit B, you recall that you saw the dollar amount,

9 the numbers, the $730.38?  Do you remember seeing that at the time

10 that you were presented with these documents?

11    A. Yes.

12 (Id., 62:6-9,12.)

13    Q. So I understand you didn't read the English words on the

14 document, but you saw the numbers and you understood the

15 numbers; correct?

16    A. Yes, what they told me what I was going to pay, 730.

17 (Id., 62:13-15,17-18.)

18    Q. Did you look at the second page of Exhibit A at all at the time

19 you signed the loan documents?

20    A. No.

21    Q. Did you look at the –

22    A. All I saw was that 1.75.

23

24

1  (Id., 63:12-16.)  Thus, Mrs. Quezada saw, understood, and believed that the

2  documents listed the material terms of the loan: the amount borrowed, the interest

3  rate, and her monthly payment.

4        Moreover, Plaintiff's actual reliance is further established by the fact that

5  others translated the terms of the documents to her and explained them to her in

6  Spanish.  Here, the notary explained the material terms of the loan to Mrs.

7  Quezada contemporaneously at the signing.  Loan Center's loan officer, Jose

8  Ornelas, testified that it was the notary's standard practice to explain the terms of

9  the *loan as set forth in the documents*:

10        Q.  Okay.  Have you ever attended a closing of a mortgage loan?

11        A.  Yes.

12        Q.  Can you describe the role of the notary at the closing?

13        . . .

14        A.  Yes, the notary explains.

15        Q.  Let me rephrase that.  Based upon your observation of attending

16        closings, what is the role of a notary?

17        A.  Okay.  The notary is to explain each paper on that package.

18        Q.  Okay.  So the notary will go through, for instance, the note and

19        describe the payment terms?

20        A.  Yes.

21        Q.  And the Deed of Trust?

22        A.  Yes.

23        Q.  Will the notary go through the truth in lending disclosures?

24        A.  Yes.

1  (Deposition of Jose Ornelas, Tr. 37:22-38:16, attached as Ex. B to the Shub Reply

2  Decl.)

3        More importantly, Teresa Ortega, the woman who put Mrs. Quezada in

4  touch with Loan Center's loan broker and who was present at the signing of her

5  loan documents, testified that the notary explained each document to Mrs.

6  Quezada in Spanish as she signed them:

7        Q.   Okay.  Was the closing conducted in Spanish?

8        A.   Yes.

9        Q.   It was all in Spanish, right?

10       A.   Yes.

11  (Deposition of Teresa Ortega, Tr. 34:7-10, attached as Ex. C to the Shub Reply

12  Decl.)

13       Q.   Now, you were in the room when she was signing the loan

14            documents, though; is that right?

15       A.   I was there.

16       Q.   Okay.  Did you witness the notary explain loan documents to

17            Josefina at the closing?

18       . . .

19       A:   No.

20       Q.   The notary didn't explain anything?

21       A.   Oh, no, the notary, yes.

22       Q.   So you observed the notary explaining loan documents to

23            Josefina?

24       A.   Yes.

1      Q.  Yes?

2      A.  Yes.

3  Ortega Dep Tr. 34:21-35:10.

4         Not only is this indirect reliance sufficient under California law to prove

5  "actual" reliance for both the UCL and fraudulent omission claims as a general

6  matter, but case law is clear that, in instances like this where the individual is

7  unable to read mortgage documents because of a language barrier, actual reliance

8  may be established by evidence that the alleged fraudulent documents were

9  explained by another individual to the plaintiff.  See, e.g., Martinez v. Freedom

10 Mortgage Team, Inc., 527 F. Supp. 2d 827, 838 (N.D. Ill. 2007) (in fraud action

11 against mortgage company, where Spanish-speaking borrower mortgagor did not

12 understand English, reliance on interpreter to explain terms of mortgage

13 established borrrower's "justifiable reliance" on the mortgage documents);

14 Gonzalez v. Ameriquest Mortgage Co., No. C 03-00405 JSW, 2004 WL 2472249,

15 at *7 (N.D. Cal. Mar. 1, 2004) (finding justifiable reliance on allegedly fraudulent

16 documents is proper where borrower cannot read English and relies on interpreter

17 to understand terms of document).

18        Moreover, it has long been the law in California law that the legal duty to

19 read a contract or instrument before signing it may be satisfied, where the person

20 is unable to read the document, either by (1) having the document read; or (2)

21 having the document examined and explained by someone on whom the person

22 has a right to rely or place in his or her confidence.  Moore v. Copp, 119 Cal. 429,

23 435 (1897).  That is precisely what was done here.  Thus, Mrs. Quezada has

24

1  demonstrated actual reliance and has standing to prosecute her UCL and common

2  law claims.

3       3.   <u>Plaintiff's Claim is Typical and She is an Adequate Class</u>

4            <u>Representative</u>

5       Defendants further argue that Mrs. Quezada's alleged failure to read the

6  loan documents in detail also renders her an atypical and inadequate class

7  representative under Rule 23(a)(3) and (a)(4).  (Opp. at 19.)  Those arguments are

8  also unavailing.  Rule 23(a)(3) requires only that proposed' representatives'

9  "<u>claims or defenses</u>" be typical, not that the individual representative herself be

10 indistinguishable from absent class members.  Fed. R. Civ. P. 23(a)(3) (emphasis

11 added); <u>Rodriguez v. Hayes</u>, 578 F.3d 1032, 1049 (9th Cir. 2009)

12 (representative's claims need only be "reasonably co-extensive with those of

13 absent class members; they need not be substantially identical") (citation and

14 internal quotation marks omitted).  Therefore, the typicality analysis under Rule

15 23(a)(3) in a case involving form contracts does not require, as Defendants imply,

16 that the circumstances surrounding the plaintiff's and the absent class members'

17 contractual formation be identical.

18      For example, in <u>Johnson v. Aronson Furniture Co.</u>, No. 96-C-117, 1998

19 WL 641342 (N.D. Ill. Sept. 11, 1998), the plaintiff brought a class suit against the

20 defendant due to its failure to properly disclose charges in a uniform retail

21 installment contract.  Defendant opposed certification, in part, on typicality

22 grounds, arguing that the plaintiff did not review in detail the contract upon which

23 her claim was based.  <u>Id.</u> at *4.

24      The court rejected the defendant's argument, explaining:

14

> Although [Plaintiff] may have read her retail installment contract less thoroughly than other putative class members, this alone does not make her claim atypical.  By definition, all proposed class members entered into a standard retail installment sales contract with Aronson in which the $7.00 non-filing fee was disclosed as part of the "amount financed" instead of the "finance charge." The substantive issue to be resolved is whether Aronson's practice complies with the requirements of TILA, the Illinois Consumer Fraud and Deceptive Trade Practices Act, and RICO. Regardless of factual distinctions in each putative class member's claim, the resolution of this core issue will be dispositive as to [the defendant's] liability.

Id. (citations omitted); see also Rankin v. Rots, 220 F.R.D. 511, 519 (E.D. Mich. 2004) (rejecting argument that plaintiff's failure to read ERISA plan documents made her an atypical class representative because plaintiff still had to prove "same core issues" regarding defendant's conduct); In re Pizza Time Theatre Secs. Litig., 112 F.R.D. at 22 (indirect reliance did not render class representative's claim atypical).

Defendants' assertion that Mrs. Quezada is an inadequate class representative is equally meritless.  (Opp. at 20.)  The Rule 23(a) adequacy-of-representation requirement is simply not implicated by Plaintiff's limited English proficiency, nor is it implicated here by her alleged failure to comb through the loan documents herself.  Surowitz v. Hilton Hotels, 383 U.S. 363, 372-74 (1966) (rejecting denial of class certification on adequacy grounds where proposed representative had very limited grasp of English, and therefore could not explain statements in complaint, could not name any defendant, or state nature of misconduct alleged in complaint, and who relied on her son-in-law to explain things to her.); Johnson v. Rohr-Ville Motors, Inc., 189 F.R.D. 363, 369 (N.D. Ill. 1999) (in class action for TILA violations, plaintiff's alleged failure to read

1  contract at issue did not render her an inadequate class representative).

2       As noted above, the record establishes that Plaintiff, in fact, understood the

3  essential terms of her loan – which, as set forth in Plaintiff's motion, means she

4  believed she was getting a 1.75% interest rate, and that she was not aware when

5  she viewed the $730 minimum payment that making that payment would result in

6  negative amortization.  (Pl.'s Motion at 14-15.)  Consequently, Plaintiff's

7  experience with her Option ARM loan is precisely the "typical" situation that all

8  borrowers who received an Option ARM loan product experienced.  Thus,

9  Plaintiff's claims satisfy the typicality requirement and she can adequately

10  represent the class.

11       **C.**     **A Class-Wide Presumption or Inference of Reliance Applies to**

12              **Plaintiff's Fraudulent Omission Claim**

13       Defendants attack Plaintiff's ability to establish predominance under Rule

14  23(b)(3) by arguing that a presumption of reliance is inappropriate here. (Opp. at

15  13, 27-30.)  As Plaintiff set out in her opening brief (Pls. Motion at 17-19), the

16  factual underpinnings of Plaintiff's claims are Defendants' omission of material

17  facts in connection with the Option ARM loans.  <u>Plascencia,</u> 2009 WL 2569732,

18  at *8-9 ("Plaintiffs' fraud claim is based on an omission rather than an affirmative

19  misrepresentation.").  Thus, while reliance is an element of Plaintiff's common

20  law fraud claim, as the <u>Plascencia </u>court observed, reliance "may be presumed in

21  the case of a material fraudulent omission."  <u>Id.</u>

22       In an effort to defeat the class-wide presumption of reliance that the

23  <u>Placencia</u> court endorsed on a nearly identical set of facts, Defendants attempt to

24  recast Plaintiff's claim as an affirmative misrepresentation claim, or one involving

1  "mixed omissions and misstatements." (Opp. at 13.)[4]  Defendants' argument,

2  however, fails for three reasons: (1) the cases they cite in support of their

3  argument are distinguishable and at the same time they fail to explain why

4  Plascencia was not correctly decided; (2) they are wrong when they argue that

5  there is no evidence that the loan documents used for all class members were

6  uniform; and (3) Defendants misinterpret the effect that Proposition 64 had on the

7  UCL regarding absent class members' need to prove actual reliance.

8       Defendants cite several cases that are inapposite.  They rely heavily on

9  Jordan v. Paul Financial, No. C 07-04496 SI, 2009 WL 192888 (N.D. Cal. Jan.

10  27, 2009), for the proposition that reliance cannot be presumed on a class-wide

11  basis.  Significantly, the court in Jordan did not find that a presumption of reliance

12  was appropriate for reasons unique to that case.  As an initial matter, the Jordan

13  court believed that the fraud claim entailed affirmative misrepresentations,

14  whereas the court in Plascencia more accurately characterized the fraud claim as

15  involving material omissions, thus making the presumption of reliance in

16  Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1972), and

17  its progeny applicable.  Jordan, 2009 WL 192888, at *5.  As in Plascencia,

18  Plaintiff's claims are based on what Defendants failed to tell her and other class

19  _____

20  [4]Even if Plaintiff's claims were based on affirmative misrepresentations rather than omissions,
she would still be entitled to a presumption of reliance here.  Where a common set of
21  misrepresentations is made to all class members, conduct by the class members consistent
with reliance gives rise to an inference for the entire class.  Vasquez v. Superior Court, 4 Cal.
22  3d 800, 814 (1971).  "[R]eliance upon alleged false misrepresentations may be inferred from
the circumstances attending the transaction which oftentimes afford a much stronger and more
23  satisfactory evidence of inducement which prompted the party defrauded to enter into the
contract than his direct testimony to the same effect."  Id. (internal quotation marks omitted).

24

1 members.  These omissions, most notably, include the certainty that their loans

2 will experience negative amortization.  Thus, this claim is not based or predicated

3 upon what Defendants affirmatively represented in the loan documents.  This is an

4 omissions-based fraud case.

5    The <u>Jordan</u> court also found that the plaintiff was a sophisticated consumer

6 who knew and understood the Option ARM loan and the documents he had

7 signed.  That was based upon:  (1) Jordan's working knowledge of, and prior

8 experience with, mortgage products; (2) Jordan's working relationship with his

9 mortgage broker; and (3) the fact that Jordan had specifically sought a mortgage

10 product that would reduce his monthly payments and "buy time" until his home

11 increased in value.  <u>Jordan</u>, 2009 WL 192888, at *5-6.  In other words, Jordan

12 was an atypical plaintiff and, therefore, not an appropriate class representative

13 because he understood the terms and conditions of his loan and was fully

14 informed regarding its effect on his financial situation.  The court concluded that

15 Jordan had a short-term goal and affirmatively chose the Option ARM loan as the

16 best solution to achieve it.  <u>Id</u>.

17    Here, Mrs. Quezada was not fully informed, and had no such strategy or

18 goals whereby the Option ARM would work in her favor.  Indeed, the very terms

19 and conditions of her loan worked against her.

20    Defendants also rely on <u>Poulos v. Caesars World,</u> 379 F.3d 654 (9th Cir.

21 2004), for the proposition that individual reliance must be proven because it is

22 "[o]nly by looking to the record evidence, as well as the elements of the claims

23 and defenses asserted, can this Court determine whether proof of Quezada's

24 claims would also prove the class claims."  (Opp. at 11.)  Yet, <u>Poulos</u> provides no

1  support for Defendants' position  as the Ninth Circuit upheld the denial of class

2  certification because it found that the putative class, comprised of gamblers on

3  cruise ships, was not a homogenous group and the theory of liability was not

4  based exclusively on material omissions.  <u>Poulos</u>, 379 F.3d at 666.  Similarly,

5  another case on which Defendants rely, <u>Gartin v. S&M NuTec LLC</u>, 245 F.R.D.

6  429 (2007), stands for the proposition that reliance is not appropriate in a case

7  where liability is predicated on misrepresentations.  Since this case is predicated

8  on liability for omissions of material facts, <u>Poulos</u> and <u>Gartin</u> are inapposite.

9      It comes as no surprise that Defendants go to great lengths in an attempt to

10  distinguish the recent class certification decision in <u>Plascencia</u> (Opp. at 14-15),

11  which granted class certification on a largely identical omissions case.  That court

12  rightfully applied the presumption of reliance enunciated in <u>Affiliated Ute</u>.

13      In their futile effort to discredit the <u>Plascencia</u> court's invocation of

14  <u>Affiliated Ute</u>, Defendants necessarily misconstrue the holding in <u>Mirkin</u>.  (Opp.

15  at 12-15.)  Putting aside the fact that <u>Mirkin</u> did not involve a UCL claim (it

16  involved a claim for deceit) which is based on "a mixture of statutory and

17  common law" the Mirkin plaintiffs cited <u>Affiliated Ute</u> in support of their

18  argument that "actual reliance cannot logically be an element of a cause of action

19  for deceit based on an omission because it is impossible to demonstrate reliance

20  on something that one was not told."  <u>Mirkin</u>, 5 Cal. 4th at 1093.  The <u>Mirkin</u>

21  court declined to adopt the <u>Affiliated Ute</u> presumption standard, stating that "it is

22  not logically impossible to prove reliance on an omission," and holding that that

23  "[o]ne need only prove that, had the omitted information been disclosed, one

24  would have been aware of it and behaved differently."  <u>Id.</u>  Here, Plaintiff's

1   reliance argument is consistent with <u>Mirkin</u> because no reasonable person would

2   have consummated the mortgage transaction had the true terms, conditions, and

3   consequences of the Option ARM loan products (including the certainty of

4   negative amortization) been clearly disclosed.  <u>Plascencia</u>, 2009 WL 2569732, at

5   *9.

6       Defendants also attempt to distinguish this case from <u>In re First Alliance

7   Mortgage Co.</u>, 471 F.3d 977 (9th Cir. 2006), by trying to limit <u>First Alliance</u> to

8   claims involving standardized sales presentations (Opp. at 14.)  But as the Ninth

9   Circuit observed in upholding certification, <u>First Alliance</u> involved "a centrally

10  orchestrated scheme to mislead borrowers through a standardized protocol the

11  sales agents were carefully trained to perform, which resulted in a large class of

12  borrowers entering into loan agreements they would not have entered had they

13  known the true terms."  <u>Id.</u> at 991 (emphasis added).  This is precisely what

14  occurred in this case, except that Defendants here executed a much simpler

15  scheme by skipping middleman sales agents and using the standardized loan

16  documents themselves as the vehicle for the fraud.

17      Accordingly, this Court should conclude that class reliance on Defendants'

18  material omissions should be presumed in proving the fraudulent omission claim.

19      **D.      Proposition 64 Does Not Alter the UCL's "Likely to Deceive"**

20      **Standard for Absent Class Members Under the UCL**

21      In her opening brief, Plaintiff demonstrated that common issues

22  predominated and class treatment was appropriate under any of the three "prongs"

23  of the UCL: the "unfair," the "unlawful," or the "fraudulent business practices"

24  prohibitions.  (Pl.'s Motion at 21-24.)  In response, Defendants argue that

1   "Proposition 64 has completely altered the landscape [for UCL] claims."  (Opp. at

2   27.)  Such wishful thinking completely ignores the teachings of Tobacco II  and

3   shows a fundamental misunderstanding of the impact of Proposition 64 and

4   whether it requires the members of the class (other than Plaintiff Quezeda) to

5   show reliance on an individual basis.[5]

6        Defendants argue that the "likely to deceive" liability standard for proving

7   the "unfair" or "fraudulent" prongs of the UCL is no longer valid law and that

8   absent class members must meet the same standing requirement of the UCL as the

9   named plaintiff.  (Opp. at 28-29.)  As Tobacco II makes clear, the post-

10  Proposition 64 standing requirement does not apply to absent class members for

11  any prong of the UCL.  Tobacco II, 46 Cal. 4th at 319.  Although Defendants

12  argue otherwise, "[Proposition 64] was not intended to have any effect on absent

13  class members. Id. (emphasis added).  Hence, all that must be proven at trial to

14  establish a violation, for example, of the UCL's "fraudulent" prong is that

15  "members of the public are likely to be deceived" by the defendant's conduct.  Id.

16  at 312 (citing Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002)); accord Bank of

17  the West v. Superior Court, 2 Cal. 4th 1254, 1267 (1992); Comm. on Children's

18  Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 211 (1983); Fletcher v. Sec.

19  Pac. Nat'l Bank, 23 Cal. 3d 442, 451 (1976)).  Recovery is "available without

20  individualized proof of deception, reliance, and injury."  Tobacco II, 46 Cal. 4th

21  _____

22  [5] Plaintiff notes that, in Tobacco II, the California Supreme Court noted that a class
    representative's reliance may be presumed is it can be shown that the misrepresentation (or, as
23  here, the omission) was material. In re Tobacco II, 46 Cal. 4th at 327.

24

1 at 320 (citing <u>Bank of the West</u>, 2 Cal. 4th at 1267; <u>Comm. on Children's</u>

2 <u>Television</u>, 35 Cal. 3d at 211). Thus, common questions will predominate in

3 resolving whether Defendants are liable to Quezada and the members of the class

4 under the UCL's "fraudulent" prong.  <u>Plascencia</u>, 2009 WL 2569732**,** at *10

5 ("The individual circumstances of each class member's loan need not be examined

6 because the class members are not required to prove reliance and damage.").

7 Common issues will thus predominate on the UCL [fraudulent prong] claim.").

8        Indeed, in <u>Tobacco II</u>, the California Supreme Court was very careful to

9 preserve the pre-Proposition 64 distinction between a UCL claim under that

10 statute's "fraudulent" prong and common law fraud claims:

11              The fraudulent business practice prong of the UCL has
              been understood to be distinct from common law fraud.
12              "A [common law] fraudulent deception must be actually
              false, known to be false by the perpetrator <u>and</u>
13              <u>reasonably relied upon</u> by a victim who incurs damages.
              <u>None of these elements are required to state a claim</u> for
14              … relief" <u>under the UCL</u>.

15 <u>Id.</u> at 312 (quoting <u>Day v. AT&T Corp.</u>, 63 Cal. App. 4th 325, 332 (1998))

16 (emphasis added).

17        In a very recent case, the California Court of Appeal confirmed <u>Tobacco</u>

18 <u>II</u>'s holding that Proposition 64 did not alter the UCL's substantive liability

19 standards, and that <u>pre</u>-Proposition 64 precedents (including those establishing the

20 "likely to deceive" standard for "fraudulent" prong claims) continue to govern:

21              Thus, <u>pre-Proposition 64 caselaw</u> that describes the
              kinds of conduct outlawed under the UCL <u>is applicable</u>
              <u>to post-Proposition 64 cases</u> such as the present case.
22              The <u>only</u> difference is that, after Proposition 64,
              plaintiffs <u>(but not absent class members in a class</u>
23              <u>action)</u> must establish that they meet the Proposition 64
              standing requirements. . . . As noted above, a fraudulent

24

business practice is one that is <u>likely to deceive</u> consumers.

<u>Morgan v. AT&T Wireless Servs, Inc.</u>, 177 Cal. App. 4th 1235, 99 Cal. Rptr. 3d 768, 783, 785 (2009) (citing <u>Tobacco II</u>, 46 Cal. 4th at 312, 320) (emphasis added).  <u>Tobacco II</u> confirms that the UCL fraudulent prong claims may be predicated on material "nondisclosures," and that "a presumption, or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material."  <u>Tobacco II</u>, 46 Cal.4th at 326-27.

As Plaintiff pointed out in her opening brief (Pls. Motion at 16, 23), the Ninth Circuit's recent decision in <u>Yokoyama</u> bolsters Plaintiff's argument that a class trial of her UCL claim will not require the Court to look into each class member's individual transaction and determine that class member relied on Defendants' material omissions.  <u>Yokoyama</u>, 2009 WL 2634770, at *2, *5. Defendants' *sole* basis for distinguishing <u>Yokoyama</u> is that it was decided under Hawaii's Deceptive Trade Practices Act, Ha. Rev. State § 480-2.  That is a distinction without a difference.  The Ninth Circuit explained that proof of a deceptive act under the Hawaii statute, as with the UCL, does not require individual reliance:

> [R]eliance is judged by an objective "reasonable person" standard. Hawaii's Supreme Court has said as much: "[A]ctual deception need not be shown; the capacity to deceive is sufficient."  Hawaii uses an objective test to effectuate its remedial consumer protection statute, the district court erred in holding that individual reliance issues make this case inappropriate for class certification.

<u>Yokoyama</u>, 2009 WL 2634770, at *5 (citations and some internal quotation marks omitted).

1    Finally, Defendants' reliance on a recent appellate decision in <u>Cohen v.</u>

2  <u>DIRECTV</u>, 178 Cal.App.4th 966, 101 Cal.Rptr.3d 37 (2009), is misplaced.  First,

3  <u>Cohen</u> is driven by the application of a single principle: that the UCL does not

4  "authorize an award for injunctive relief and/or restitution on behalf of a

5  consumer who was never exposed ***in any way*** to an allegedly wrongful business

6  practice." <u>Id</u>. at 980 (emphasis added).  In <u>Cohen</u>, the class members never were

7  exposed to the alleged false advertising.  In contrast, where all class members

8  were exposed to the unfair business practice, <u>Cohen</u> is entirely irrelevant.

9    To the extent <u>Cohen</u> is construed as holding that Proposition 64 imposes an

10  additional "reliance" element, such a ruling would be directly contrary to

11  controlling California law.  In <u>Tobacco II</u> the California Supreme Court recently

12  ruled that, "[T]o state a claim under either the UCL or the false advertising law . .

13  . "it is only necessary to show that 'members of the public are likely to be

14  deceived.'"  <u>Tobacco II</u>, 46 Cal.4th at 311 (quoting <u>Kasky v. Nike, Inc.</u>, 27

15  Cal.4th 939, 951 (2002) (internal quotations omitted)).  This is because of "the

16  UCL's focus on the defendant's conduct, rather than the plaintiff's damages, in

17  service of the statute's larger purpose of protecting the general public against

18  unscrupulous business practices." <u>Id</u>.

19    In conclusion, Plaintiff's UCL claim under the fraudulent prong is

20  especially amenable to class treatment as Proposition 64 addresses only the

21  requirement that Quezada herself have <u>standing</u> (that is, that she suffered actual

22  injury).  As the California Supreme Court recently made clear in <u>Tobacco II</u>,

23  absent members of a class asserting a UCL claim need not demonstrate their

24  standing, let alone their reliance on material facts concealed by the defendant.

1  Accordingly, the presumption of reliance doctrine recognized in California in

2  class actions should be employed here in analyzing whether Plaintiff's UCL claim

3  should be afforded class treatment.

4      **E.      The Question of Defendants' Liability as to All Class Members**

5              **Will Be Resolved by Reference to the Materially Uniform Loan**

6              **Documents Used by Defendants**

7          Defendants attempt to defeat a finding of predominant common questions

8  by concocting a kitchen sink full of circumstances that allegedly requires the

9  Court to look at the individual circumstances surrounding each class member's

10  loan.  (Opp. at 22-27.)  For example, Defendants strenuously argue that the Court

11  will have to examine the evidence relating to conversations that class members

12  may have had with mortgage brokers.  (Opp. at 22-24.)  But that argument again

13  completely ignores the Ninth Circuit's decision in <u>Yokoyama,</u> where the court

14  expressly rejected the necessity of considering such oral communications in a

15  case, like here, that focuses on the infirmities contained within the four corners of

16  the allegedly fraudulent documents:

17          Plaintiffs allege that [Defendant's] documentation deceptively
           represents that its annuities protect its clients from the risks of the
18         stock market and that [Defendant] fails to include in its
           documentation facts necessary to inform prospective purchasers of
19         the true risks, possible detriments, and unsuitability of [Defendant's]
           long-term annuities for seniors. The plaintiffs' complaint therefore
20         makes clear that plaintiffs' claims rest on [Defendant's] own sales
           materials, not any representations made by specific brokers to the
21         individual plaintiffs.  Specifically, their allegations do not relate to
           what they were told by brokers; rather, their allegations relate to what
22         information was absent from [Defendant's] brochures.

23                                  * * *

24         A [documents case] will not require the fact-finder to parse what oral
           representations each broker made to each plaintiff.  Instead, the fact-

1

finder will focus on the standardized written materials given to all plaintiffs to determine whether those materials are 'likely to mislead reasonable consumers acting reasonable under the circumstances.'

2

3   <u>Yokoyama</u>, 2009 WL 2634770, at *2, *5.  So, too, in this action, the trier of

4   fact will need to focus only on what the Defendants' materially uniform loan

5   documents said or did not say – not on any brokers' communications.   Thus,

6   Defendants' contention is meritless.[6]

7   Similarly, Defendants' next argument, that inquiries are necessary

8   regarding class members' "reasons for entering into an Option ARM loan," and

9   their prior experience with such loans, also fails.  (Opp. at 24-27.)  The law

10   unambiguously makes the mental state and subjective beliefs of the parties as

11   irrelevant as the oral communications of third parties.  <u>See</u>, <u>e.g.</u>, Cal. Civ. Code §

12   1639 ("When a contract is reduced to writing, the intention of the parties is

13   ascertained from the writing alone."); Cal. Civ. Code § 1625 ([A] writing

14   "supersedes all the negotiations or stipulations concerning its matter which

15   preceded or accompanied the execution of the instrument.").

16   Notably, as Defendants' own discovery production reveals, there is a finite

17   set of loan documents with only minor variations from year to year.  (Pl.'s

18

19

20   [6] As Plaintiff pointed out in her opening brief, Defendants' argument also fails under the
mandate of state and federal law that a creditor cannot delegate away its duty to disclose

21   important terms.  <u>See e.g. Vallies v. Sky Bank</u>, 432 F.3d 493, 494 (3d Cir.  2996); see also
<u>Barry v. Raskov</u>, 232 Cal. App. 3d 447, 455 (1991)("[T]he law has long recognized one party

22   may owe a duty to another which, for public policy reasons, cannot be delegated.  Such non-
delegable duties derive from statutes, contracts, and common law precedents.").  These duties

23   are only satisfied when lenders make proper disclosures.  Here, those disclosures were not
made to borrowers and any representations or omissions by brokers do not relieve the lenders
of their legal duties.

24

Motion, Shub Decl. Ex. 8.)  <u>Every</u> class member's fully-integrated loan documents fail to disclose that negative amortization was <u>certain</u> to occur when the payment schedule listed in the TILDS was followed.  Because the claims here are based on fully integrated loan documents at issue and nothing more, the individual circumstances and mindset of each class member need not be examined.

Despite Defendants' efforts to confound the issues with legally irrelevant broker testimony and float smokescreens about class members' individual circumstances, the Rule 23(b)(3) requirement that common issues predominate is easily met in this case.  Specifically, the common predominating questions are whether the Loan Documents given to Plaintiff and each class member failed to disclose: (i) a single interest rate; (ii) that the payment schedule listed in the TILDS was based upon the lower of the two interest rates disclosed, or the teaser 1-3% interest rate; (iii) that for up to the first 3-5 years of the loan, payments made at the rate provided to Plaintiffs and the class members in the TILDS were certain to cause negative amortization; and (iv) that a loss of equity and/or the loss of Plaintiff and the class members' residence was substantially certain to occur if Plaintiffs and class members made payments according to the payment scheduled provided by Defendants.  Accordingly, common issues predominate and this case is eminently suitable for class treatment, as the <u>Plascencia</u> court recently found in virtually identical circumstances and the Ninth Circuit itself found in analogous circumstances in <u>Yokoyama</u>.

## III.   CONCLUSION

For all of the foregoing reasons, the Court should certify the proposed class.

1 | Dated:  November 25, 2009

2

3 | Respectfully submitted,

4 | SEEGER WEISS LLP

5 | BY:__/S/_____
  | Christopher A. Seeger
6 | Jonathan Shub
  | 1515 Market Street, STE 1380
7 | Philadelphia, PA 19102
  | Tel. 215/564-2300
8 | Fax. 215/851-8029

9 | ARBOGAST & BERNS, LLP
  | David M. Arbogast
10 | Jeffrey K. Berns
  | 6303 Owensmouth Ave., 10th Fl.
11 | Woodland Hills, California 91367
  | Telephone: 818/961-2000
12 | Facsimile: 818/936-0232

13 | Attorneys for Plaintiff Josefina Quezada

14

15

16

17

18

19

20

21

22

23

24