UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JOSEFINA QUEZADA, individually
and on behalf of all others
similarly situated,

       Plaintiff,

  v.

LOAN CENTER OF CALIFORNIA,
INC., EMC MORTGAGE
CORPORATION, STRUCTURED ASSET
MORTGAGE INVESTMENTS II, INC.,
THE BANK OF NEW YORK MELLON,
and DOES 1 through 10
inclusive,

       Defendants.
_____/

NO. CIV. 2:08-00177 WBS KJM

MEMORANDUM AND ORDER RE:
MOTION FOR CLASS CERTIFICATION

----oo0oo----

       Plaintiff Josefina Quezada brings this putative class
action against defendants Loan Center of California, Inc.
("LCC"), EMC Mortgage Corporation ("EMC"), Structured Asset
Mortgage Investments II, Inc. ("SAMI"), and the Bank of New York
Mellon ("Mellon") for violations of the Truth in Lending Act

1

("TILA"), 15 U.S.C. §§ 1601-1667f; violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210; fraudulent omissions; breach of contract; and breach of the covenant of good faith and fair dealing.  Before the court is plaintiff's motion for class certification of her fraudulent omissions and UCL claims.[1]

I.   Factual and Procedural Background

        The facts of this action have already been recounted by this court in its previous orders, and do not all bear repeating here.  See Quezada v. Loan Ctr. of Cal., Inc., No. Civ. 08-177 WBS KJM, 2008 WL 5100241, at *1-2 (E.D. Cal. Nov. 26, 2008).  In brief, plaintiff alleges defendants violated California's UCL and committed fraud when they failed to disclose material risks posed by defendants' Option Adjustable Rate Mortgages ("OARMs").  Plaintiff obtained her loan from LCC.  The TAC alleges that defendants' OARM loans were based on an artificially low "teaser" interest rate that was guaranteed to increase.  Plaintiff alleges that her loan documents and disclosures did not disclose that her ORAM specified monthly payments that were based on this artificially low interest rate, that this rate would only remain in effect for thirty days, and that the ORAM would certainly result in negative amortization.

        EMC is not a direct lender, but rather entered into an agreement with LLC, under which LLC could sell mortgage loans to EMC.  (Defs.' Statement of Facts ("SOF") ¶ 73.)  EMC purchased or

---

        [1]   Plaintiff does not attempt to certify a class under TILA, but rather argues that the TILA violations alleged in the Complaint may serve as one of the bases for certification of plaintiff's UCL claim.

is otherwise an assignee of plaintiff's loan. (Third Am. Compl.

("TAC") ¶ 4.)   The TAC alleges that SAMI and Mellon presently own

or owned the loans at issue.   (<u>Id.</u> ¶¶ 5-6.)   Plaintiff contends

that EMC, SAMI, and Mellon are liable for the allegedly

fraudulent omissions in LLC's loan documents because they aided

and abetted LLC's wrongful conduct by participating in the

purchase and sale of OARM loans.   (Mem. I/S/O Pls.' Mot. Class

Cert. 4:17-24.)

Plaintiff now seeks certification of a class for her

fraud and UCL claims.   Plaintiff defines the class as follows:

> All individuals in the United States of America who,
> between January 24, 2004 and the date that notice is
> mailed to the Class, obtained an Option ARM loan
> originated by LOAN CENTER OF CALIFORNIA, INC. with the
> following characteristics:
> (i)   The numerical interest rate listed on page one of
> the Promissory Note is 3.0% or less;
> (ii)  The Note uses the term "may" instead of "will or
> shall" change when describing an increase of the
> listed numerical rate. <u>E.g.</u>: "The interest rate I
> pay may change";
> (iii) The margin amount added to the index for the loan
> is equal to or greater than 1.75%;
> (iv)  The promissory note does not contain any statement
> that paying the amount listed as the "initial
> monthly payment" "will," as opposed to "may,"
> result in negative amortization after the first
> interest rate change date.

(<u>Id.</u> 3:14-23.)

II.   <u>Discussion</u>

A class action will be certified only if it meets the

four prerequisites identified in Federal Rule of Civil Procedure

23(a) and additionally fits within one of the three subdivisions

of Rule 23(b).   Although a district court has discretion in

determining whether the moving party has satisfied each Rule 23

requirement, <u>Califano v. Yamasaki</u>, 442 U.S. 682, 701 (1979);

1    <u>Montgomery v. Rumsfeld</u>, 572 F.2d 250, 255 (9th Cir. 1978), the

2    court must conduct a rigorous inquiry before certifying a class.

3    <u>Gen. Tel. Co. of the Sw. v. Falcon</u>, 457 U.S. 147, 161 (1982); <u>E.</u>

4    <u>Tex. Motor Freight Sys. v. Rodriquez</u>, 431 U.S. 395, 403-05

5    (1977).

6         A.   <u>Class Definition</u>

7              Implicit in Rule 23 is the requirement that the class

8    must be adequately defined and clearly ascertainable.

9    <u>DeBremaecker v. Short</u>, 433 F.2d 733, 734 (5th Cir. 1970); <u>see</u>

10   <u>also</u> <u>Lozano v. AT&T Wireless Servs., Inc.</u>, 504 F.3d 718, (9th

11   Cir. 2007).  A class definition must be "precise, objective, and

12   presently ascertainable."  <u>O'Connor v. Boeing North Am., Inc.</u>,

13   197 F.R.D. 404, 416 (C.D. Cal. 2000) (quotation marks omitted).

14   "An adequate class definition specifies 'a distinct group of

15   plaintiffs whose members [can] be identified with

16   particularity.'"  <u>Campbell v. PricewaterhouseCoopers, LLP</u>, 253

17   F.R.D. 586, 593 (E.D. Cal. 2008) (quoting <u>Lerwill v. Inflight</u>

18   <u>Motion Pictures, Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978)).

19              Plaintiff's class definition consists of a defined

20   group of individuals--those who purchased OARM loans from LCC

21   whose loans contained four distinct terms.  The members of the

22   class can easily be determined by reference to their loan

23   documents, which would allow precise and objective ascertainment

24   of the members of the class.  Plaintiff contends that she is

25   aware of 181 such loans that were bought, serviced, and

26   securitized by defendants.  Plaintiff will be likely able to

27   identify the remaining class members through the records of

28   defendants.  Although plaintiff may not be able to identify every

                                   4

potential class member at this time, this does not preclude the

class definition from being ascertainable.  <u>See</u> <u>Mazur v. Ebay,</u>

<u>Inc.</u>, 257 F.R.D. 563, 566 (N.D. Cal. 2009) ("[T]he class need not

be so ascertainable that every potential member can be identified

at the commencement of the action.")[2]  Plaintiff has provided a

precise, objective, and ascertainable class definition.

       B.   <u>Rule 23(a)</u>

          Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all  members
> is impracticable; (2) there are questions  of law or fact
> common to the class; (3) the claims  or defenses of the
> representative parties  are typical  of  the  claims  or
> defenses of the class; and (4) the representative parties
> will fairly and  adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a).  These requirements are more commonly

referred to as numerosity, commonality, typicality, and adequacy

---

     [2]   Defendants contend that not all class members would
have standing to sue EMC, SAMI, or Mellon because plaintiff has
not shown that all OARM loans from LCC were purchased by EMC,
SAMI, or Mellon and that accordingly the class definition is too
broad.  To have standing to bring suit in accordance with Article
III of the Constitution, a plaintiff must have suffered an actual
or imminent injury that is fairly traceable to the challenged
conduct and may be redressed by a favorable court decision.
<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).
Plaintiff's class definition includes all persons who obtained a
loan from LCC with the loan terms specified in the class
definition.  To have Article III standing the class
representative must show that she has standing to assert a claim
against each named defendant, <u>Henry v. Circus Circus Casinos,</u>
<u>Inc.</u>, 223 F.R.D. 541, 544 (D. Nev. 2004), which plaintiff has
shown.  While the class definition does not require that any
class members' loans have been sold to EMC, SAMI, or Mellon, LLC
is still a named defendant in this action.  Even though LCC is
now defunct, nothing prevents plaintiff from obtaining a default
judgment against LCC.  Though some class members will receive
only the damages from this default judgment, this does not mean
that these class members do not have standing to be a party to
this suit.  All class members at a minimum have standing against
LCC.  That these class members' damages are different than
plaintiff's does not demonstrate that they lack standing.  <u>See</u>
<u>Blackie v. Barrack</u>, 524 F.2d 891, 905 (9th Cir. 1975).

of representation, respectively.  <u>Hanlon v. Chrysler Corp.</u>, 150

F.3d 1011, 1019 (9th Cir. 1998).

When evaluating the propriety of class certification,

the court may not consider the sufficiency of a plaintiff's

claims or whether the plaintiff will prevail on the merits.  <u>See</u>

<u>Staton v. Boeing Co.</u>, 327 F.3d 938, 954 (9th Cir. 2003);

<u>Burkhalter Travel Agency v. MacFarms Int'l, Inc.</u>, 141 F.R.D. 144,

152 (N.D. Cal. 1991).  Rather, the court must accept the

substantive allegations made in the complaint as true even if the

plaintiff may not be able to later prove the allegations.  <u>See In</u>

<u>re Petroleum Prods. Antitrust Litig.</u>, 691 F.2d 1335, 1342 (9th

Cir. 1982); <u>see</u> <u>also</u> <u>Blackie v. Barrack</u>, 524 F.2d 892, 901 (9th

Cir. 1975).  Nevertheless, the court need not accept conclusory

allegations that echo the requirements of Rule 23 and may

consider factual issues in the complaint relevant to class

certification.  <u>Burkhalter</u>, 141 F.R.D. at 152; <u>see</u> <u>Moore v.</u>

<u>Hughes Helicopters, Inc.</u>, 708 F.2d 475, 480 (9th Cir. 1983).[3]

---

[3]   Defendants contend that plaintiff lacks standing for
her UCL and fraud claims and that accordingly she cannot bring
these claims on behalf of the putative class.  An inquiry into
standing asks whether a plaintiff has suffered an actual or
imminent injury that is fairly traceable to the challenged
conduct and may be redressed by a favorable court decision.
<u>Lujan</u>, 504 U.S. at 560-61.  Defendants specifically argue that
plaintiff lacks standing to pursue her fraud and UCL claims
because she did not read her loan documents and therefore cannot
prove that she relied on defendants' allegedly fraudulent
omissions.  This argument fails because unlike the cases where
district courts have refused class certification based on a lack
of standing, defendants' arguments against the fraud and UCL
claims are not premised on constitutional standing, but rather
are calls to evaluate the merits of plaintiff's claims. <u>See e.g.</u>,
<u>Easter v. Am. West Fin.</u>, 381 F.3d 948, 962 (9th Cir. 2004); <u>Hanon</u>
<u>v. Dataproducts Corp.</u>, 976 F.2d 497, 509 (9th Cir. 1992) ("[T]he
defense of non-reliance is not a basis for denial of class
certification.").  Accordingly, the court will address these

1     The court finds it unnecessary to evaluate whether
2 plaintiff's claims satisfy the numerosity, commonality, or
3 adequacy of representation requirements because they fail to meet
4 the typicality requirement.  Rule 23(a) requires that the "claims
5 or defenses of the representative parties [be] typical of the
6 claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).
7 Typicality requires that named plaintiffs have claims "reasonably
8 coextensive with those of absent class members," but their claims
9 do not have to be "substantially identical."  Hanlon, 150 F.3d at
10 1020.  The test for typicality "'is whether other members have
11 the same or similar injury, whether the action is based on
12 conduct which is not unique to the named plaintiffs, and whether
13 other class members have been injured by the same course of
14 conduct.'"  Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th
15 Cir. 1992) (citation omitted).

16     Class certification is inappropriate "where a putative
17 class representative is subject to unique defenses which threaten
18 to become the focus of the litigation."  Hanon, 976 F.2d at 508
19 (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce,
20 Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990), cert.
21 denied, 498 U.S. 1025 (1991)).  Plaintiff's complaint alleges
22 that defendants failed to disclose material information about
23 plaintiff's loan, including that the interest rate would vary and
24 that negative amortization was certain to occur under the terms
25 of the OARM.  Defendants argue that plaintiff is not typical of
26 class members because she does not speak English, had the loan

27 _____

28 arguments only insofar as they impact whether class certification
is proper.

7

1  documents explained to her via translation, and admitted at her

2  deposition that she did not read the terms of the loan documents

3  outside of recognizing several numbers on the pages of those

4  documents.  (See Meinertzhagen Decl. Ex. A (Quezada Depo.) 7:22-

5  25, 30:14-24, 31:1-23; 34:19.)  Defendants argue that this makes

6  plaintiff susceptible to the unique defense that she did not rely

7  on the allegedly fraudulent omissions and misrepresentations in

8  the loan documents.

9          1.  Fraud Claim

10         A cause of action for fraud requires proof that the

11  plaintiff relied on the misrepresentations or fraudulent

12  omissions of a defendant.  See In re Estate of Young, 160 Cal.

13  App. 4th 62, 79 (2008) (finding the essential elements of a claim

14  for fraud are "(a) a misrepresentation (false representation,

15  concealment, or nondisclosure); (b) knowledge of falsity (or

16  'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)

17  justifiable reliance; and (e) resulting damage"); Blickman

18  Turkus, LP v. MF Downtown Sunnyvale, LLC, 162 Cal. App. 4th 858,

19  868 (2008) (stating that "the plaintiff must have been unaware of

20  the fact and would not have acted as he did if he had known of

21  the concealed or suppressed fact" in an action for fraud based on

22  concealment).

23         Plaintiff did not read any of the loan documents at

24  issue and likely could not have understood the distinction

25  between a loan that "may" negatively amortize and "will"

26  negatively amortize regardless, due to her limited grasp of the

27  English language.  Thus, plaintiff may have particular

28  difficulty, which other members of the class may not share, in

8

proving reliance on the loan terms that may become the focus of the litigation.

In support of plaintiff's argument that she is not subject to a unique difficulty in proving reliance, she relies heavily on the district court's decision in <u>Plascencia v. Lending 1st Mortgage</u>, 259 F.R.D. 437 (N.D. Cal. 2009), which granted class certification of fraud and UCL claims that are almost identical to those alleged by plaintiff. In <u>Plascencia</u>, the court found that reliance was not at issue because plaintiff's claims were based solely on fraudulent omissions, and as such did not require positive proof of reliance. <u>Id.</u> at 447. The court based this finding on the Supreme Court's decision in <u>Affiliated Ute Citizens of Utah v. United States</u>, 406 U.S. 128 (1972), which held that "positive proof of reliance is not a prerequisite to recovery" in a Securities Exchange Commission Rule 10b-5 case "involving primarily a failure to disclose . . . ." <u>Id.</u> at 153. Plaintiff claims that the putative class is entitled to a presumption of reliance because her claims are entirely based on fraudulent omissions.

a.   <u>California law requires plaintiff show actual reliance to prove a fraud claim</u>

This court believes that <u>Plascencia</u> misinterpreted the applicability of <u>Affiliated Ute</u> to fraud claims. The California Supreme Court has expressly held that the presumption of reliance in <u>Affiliated Ute</u> does not apply to fraud claims under California law. <u>Mirkin v. Wasserman</u>, 5 Cal. 4th 1082, 1093-94 (1992) ("We see no reason to adopt the <u>Ute</u> presumption as California law . . . it is not logically impossible to prove reliance on an

9

omission.  One need only prove that, had the omitted information been disclosed, one would have been aware of it and behaved differently.  Moreover, . . . the body of law that has developed under Rule 10b-5 is not sufficiently analogous to the law of fraud to justify its importation into the latter.").  Rather, under California law a plaintiff must "show actual reliance on a defendant's misrepresentations or omissions as a prerequisite to establishing fraud." <u>Gawara v. U.S. Brass Corp.</u>, 63 Cal. App. 4th 1341, 1351-52 (1998).  Therefore, plaintiff is bound to encounter difficulties that other members of the class may not have on her fraudulent omissions claim.  Specifically, defendants can argue that plaintiff would not have behaved any differently had the omitted information been disclosed in the loan documents because she never read the loan documents or relied on them when she decided to enter the loan.  <u>See</u> <u>id.</u> at 1351.

> b.  <u>Plaintiff's fraud claim is based on</u>
> <u>affirmative misrepresentations, not solely</u>
> <u>fraudulent omissions</u>

Furthermore, plaintiff's fraud claim is not solely based on fraudulent omissions.  Plaintiff alleges in her TAC that "the payment amount provided by Defendant was intended to and did deceive consumers into falsely believing they would, in fact, receive the low interest rate upon which the payment schedule is based." (TAC ¶ 71.)  The TAC contends that defendants falsely represented an artificially low teaser rate and "aggressively marketed their product as a fixed, low interest home loan" despite knowing that class members' interest rates would increase under the terms of OARM loans. (<u>Id.</u> ¶ 29.)  Plaintiff further

10

1   alleges in her fraud claim that defendants made "partial,

2   misleading representations" throughout their loan documents.

3   (Id. ¶ 139.)

4           Although plaintiff tries to categorize her claims as

5   solely based on fraudulent omissions for the purposes of class

6   certification, at best plaintiff's claim is one of mixed

7   misrepresentations and fraudulent omissions.[4]  Even if the Ute

8   presumption were applicable to fraud claims under California law,

9   plaintiff's claims would not qualify for the presumption.  See

10  Poulous v. Caesars World, Inc., 279 F.3d 654, 666-67 (9th Cir.

11  2004).  Plaintiff's contention that she is entitled to a

12  presumption of reliance because the loan documents were uniform

13  is based on cases where standardized oral presentations were

14  given to each class member.  See e.g., In re First Alliance

15  Mortg. Co., 471 F.3d at 991; Vasquez v. Superior Court, 4 Cal.

16  800 (1971).  Since the class members in these cases had to have

17  listened to the same "sales pitch" verbatim to have done business

18  with the defendants, the court could infer that all class members

19  had in fact relied on defendants' misrepresentations.  However,

20  these cases are inapplicable in this case because there is no

21  guarantee that plaintiff actually was aware of the fraudulent

22  omissions in her loan documents, since she had the option of not

23  reading the documents before she signed them.

24          Plaintiff's fraud claim is therefore subject to a

25

26          [4]  The court is especially wary of finding that
    plaintiff's fraud claim relies solely on fraudulent omissions
27  given almost any fraud case based on material misrepresentations
    can be turned into a material omissions case through clever
28  pleading.  Gruber v. Price Waterhouse, 776 F. Supp. 1044, 1050
    (E.D. Pa. 1991).

1  unique defense of non-reliance that defeats her showing of

2  typicality.   See Jordan v. Paul Fin., LLC, No. C 07-04496 SI,

3  2009 WL 192888, at *5 (finding putative class representative's

4  fraud claim not typical of the class because "the possibility

5  that he did not read the loan documents establishes that the

6  litigation will focus on a defense unique to plaintiff"); see

7  also Deitz v. Comcast Corp., No. C 06-06353 WHA, 2007 WL 2015440,

8  at *5 (N.D. Cal. Jul. 11, 2007) (finding plaintiff did not

9  establish typicality because plaintiff did not read any of

10  Comcast's communications and therefore would "be subject to a

11  unique defense that he did not read, and thus could not have

12  relied on, any of the misstatements").

13                    c.   Defendants have rebutted any presumption of

14                         reliance

15          Even if plaintiff is entitled to a presumption of

16  reliance, defendants have effectively rebutted any such

17  presumption.   Plascencia noted that while the plaintiff in that

18  case was entitled to a presumption of reliance, defendants could

19  "rebut this presumption . . . by introducing evidence that

20  particular class members were either aware of the loan terms or

21  would have purchased the loans even if the terms were clearly

22  disclosed in the documents."   Plascencia, 269 F.R.D. at 447.   In

23  this case, defendants have provided uncontroverted evidence that

24  rebuts any presumption of reliance.   In her deposition, plaintiff

25  admitted that she did not read the terms of the loan and nobody

26  explained the terms of the loan to her, rather all she could

27  understand were the numbers on the page such as the date,

28  interest rate, and numbers on the payment schedule.

(Meinertzhagen Decl. Ex. A (Quezada Depo.) 30:14-24, 31:1-23; 34:19.)  Plaintiff also testified that she did not read or ask questions about the Truth in Lending Disclosure Statements she signed.  (Id. 32:2-7.)  Plaintiff contended that she did not ask questions about her loan documents during the signing because Teresa Ortega, her life insurance broker, explained to her that the loan was a thirty-year fixed-rate loan previously and plaintiff trusted Ortega because she spoke Spanish.  (Id. 16:22-17:1, 7-12, 18:10-12, 23:11-16.)  At her deposition, Ortega testified that she did not discuss the terms of plaintiff's loan with her, and that the notary at closing explained the loan documents to plaintiff.  (Id. Ex. B. at 27:25-28:2, 31:1-10, 14-16, 35:6-8.)  Furthermore, Jose Ornelas, plaintiff's mortgage broker, claimed at his deposition that he told plaintiff the consequences of an OARM loan, including that plaintiff's interest rate would increase and that there was a risk of negative amortization if she only made the minimum payment on the loan. (Id. Ex. C at 27:7-23, 28:18-29:5, 29:6-14, 21-25.)

Regardless of which version of the events surrounding the consummation of plaintiff's loan is true, it is clear that plaintiff did not rely on the loan documents that plaintiff contends are the unifying element between the class members. Either plaintiff did not read the terms at all, was not explained the terms, and simply relied on the representations of Ortega, or was explained the terms of the OARM by Ornelas or the notary at closing and was aware of the terms of the loan when she signed the loan documents.  In all scenarios it is clear that plaintiff did not rely on the misrepresentations and omissions in the loan

documents.  As defendants have rebutted any presumption of
reliance that plaintiff may be entitled to, plaintiff's fraud
claim fails to meet the typicality requirement because
plaintiff's claim is subject to a unique defense that threatens
to dominate the proceedings.

        2.  <u>UCL Claims</u>

        Plaintiff's UCL claim similarly fails to meet the
requirements of Rule 23(a)(3) because plaintiff must also prove
reliance in order to establish this claim.  The UCL prohibits any
"unlawful, unfair or fraudulent business act or practice." Cal.
Bus. & Prof. Code § 17200.  It incorporates other laws and treats
violations of those laws as unlawful business practices
independently actionable under state law.  <u>Chabner v. United
Omaha Life Ins. Co.</u>, 225 F.3d 1042, 1048 (9th Cir. 2000).  In
addition, a business practice may be "unfair or fraudulent in
violation of the UCL even if the practice does not violate any
law." <u>Olszewski v. Scripps Health</u>, 30 Cal. 4th 798, 827 (2003).
With respect to fraudulent conduct, the UCL prohibits any
activity that is "likely to deceive" members of the public.
<u>Puentes v. Wells Fargo Home Mortg., Inc.</u>, 160 Cal. App. 4th 638,
645 (2008).  Plaintiff argues that defendants' loan practices are
unlawful, unfair, and fraudulent under the UCL.

        Prior to 2004, anyone acting on behalf of the public
could bring a suit under the UCL, regardless of whether they
could show injury or damage by the challenged business practice.
In 2004, California voters approved Proposition 64, which amended
the UCL to permit suits by the Attorney General and certain
government attorneys, or by individuals who have "suffered injury

14

1   in fact and ha[ve] lost money or property as a result of unfair

2   competition."  Cal. Bus. & Prof. Code § 17204.  The California

3   Supreme Court has interpreted Proposition 64 as imposing an

4   "actual reliance requirement on plaintiffs prosecuting a private

5   enforcement action under the UCL's fraud prong."[5]  In re Tobacco

6   II Cases, 46 Cal. 4th 298, 326 (2009).  To satisfy the reliance

7   requirement "[i]t is not . . . necessary that the plaintiff's

8   reliance upon the truth of the fraudulent misrepresentation be

9   the sole or even the predominant or decisive factor influencing

10  his conduct . . . .  It is enough that the representation has

11  played a substantial part, and so had been a substantial factor,

12  in influencing his decision."  Id. (citations, quotation marks,

13  and alteration marks omitted).

14          Plaintiff will have unique difficulty in proving her

15  "unfair" and "fraudulent" theories of liability on her UCL claim

16  for the same reasons she will have difficulty on her common law

17  fraud claim.  Plaintiff's unfair and fraudulent business

18  practices theories allege that defendant's business practices

19  were unfair and fraudulent because they were based on "a pattern

20  of deceptive conduct and concealment" aimed at misrepresenting

21  the true terms of their OARM loans.  (TAC ¶ 151.)  Whether or not

22  plaintiff actually relied on these fraudulent representations

23  will become a major focus of this litigation.  In fact,

24

---

25          [5]   Plaintiff cites Yokoyama v. Midland Nat. Life Ins. Co.,
    No. 07-16825, --- F.3d ----, 2009 WL 2634770 (9th Cir. Aug. 28,
26  2009), in support of the proposition that she does not have to
    demonstrate individual reliance under the UCL.  Yokoyama is
27  inapposite, however, because it interpreted Hawaii's Deceptive
    Trade Practices Act, Ha. Rev. Stat. § 480-2, under which, unlike
28  the UCL after Proposition 64, a plaintiff does not need to
    establish reliance and causation to recover.  See id. at *1.

defendants have filed a motion for summary judgment that argues
plaintiff's UCL claim should be dismissed because she cannot
prove reliance on the fraudulent practices at issue. (See Docket
No. 85.)

While only the named plaintiff in a UCL class action
based on fraudulent conduct must demonstrate reliance and
causation, In re Tobacco II Cases, 46 Cal. 4th at 321,
plaintiff's unique susceptibility to a challenge based on her
standing to pursue a UCL claim is fatal. Were the court to
certify plaintiff as a class representative and later rule at
summary judgment that plaintiff lacks standing to pursue her UCL
claim, the class would be left without a representative to pursue
this claim. For the same reasons articulated above, plaintiff is
particularly susceptible to the argument that she did not rely on
the loan documents when she agreed to her loan. Accordingly, the
court finds that plaintiff has not satisfied the typicality
requirement for her UCL claim since whether she relied on the
loan documents will become a focus of the litigation.

Defendants also contend that the "unlawful" component
of plaintiff's UCL claim is not typical because plaintiff must
address a statute of limitations defense to the claim that many
class members would not. Defendants argue that plaintiff's TILA
claim is time barred and cannot be the basis for her "unlawful"
UCL claim. TILA has a one-year statute of limitations, while the
UCL has a four-year statute of limitations. Compare 15 U.S.C. §
1640(e), with Cal. Bus. & Prof. Code § 17208. The Ninth Circuit
has reasoned that a plaintiff cannot enforce a time-barred TILA
claim through the UCL because such an action would constitute "an

16

attempt to enforce a state regulation in an area expressly preempted by federal law." <u>Silvas v. E*Trade Mortg. Corp.</u>, 514 F.3d 1001, 1007 n.3 (9th Cir. 2008).   Plaintiff filed this action well past one year after the consummation of her loan, but argues that she is entitled to equitable tolling of the TILA statute of limitations.

Other district courts have found that a putative class representative's claims fail to meet the typicality requirement when they are subject to a statute of limitations defense that differs from other class members and would become a significant focus of the litigation.   <u>See</u> <u>Blackwell v. SkyWest Airlines, Inc.</u>, 245 F.R.D. 453, 462-63 (S.D. Cal. 2007); <u>Arabian v. Sony Electronics, Inc.</u>, No. 05cv1741 WGH (NLS), 2007 WL 627977, at **5-6 (S.D. Cal. Feb. 22, 2007); <u>Burton v. Mountain W. Farm Bureau Mut. Ins. Co.</u>, 214 F.R.D. 598, 609 (D. Mont. 2003).   The class definition proposed by plaintiff is extremely broad, including anyone who received a loan from LCC beginning January 24, 2004.   This guarantees that some class members will have statute of limitations issues that will need to be resolved, while others will not.   While plaintiff will certainly be typical of part of the class in this regard, there may be a broad swath of the class that has no statute of limitations issues, but would be bound by an order of this court if the court finds plaintiff's UCL claim time-barred in defendants' upcoming summary judgment motion.   Without any subdivisions in the proposed class definition, this court is skeptical that the statute of limitations defense is reasonably coextensive with the defenses that would be levied against many of the class members.

17

1  Plaintiff's UCL claim has therefore also failed to meet the
2  typicality requirement.

3       As both of plaintiff's claims have failed to meet the
4  requirements of Rule 23(a), the court must deny plaintiff's
5  motion for class certification.  However, even if plaintiff's
6  claims were to meet the Rule 23(a) requirements, they also fail
7  to meet the requirements of Rule 23(b).

8       C.   Rule 23(b)

9       An action that meets all the prerequisites of Rule
10 23(a) may be maintained as a class action only if it also meets
11 the requirements of one of the three subdivisions of Rule 23(b).
12 Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163 (1974).  In this
13 case, plaintiff seeks certification under Rule 23(b)(3).  A class
14 action may be maintained under Rule 23(b)(3) if (1) "the court
15 finds that questions of law or fact common to class members
16 predominate over any questions affecting only individual
17 members," and (2) "that a class action is superior to other
18 available methods for fairly and efficiently adjudicating the
19 controversy."  Fed. R. Civ. P. 23(b)(3).

20      Because Rule 23(a)(3) already considers commonality,
21 the focus of the Rule 23(b)(3) predominance inquiry is on the
22 balance between individual and common issues.  Hanlon, 150 F.3d
23 at 1022; see also Amchem Prod., Inc. v. Windsor, 521 U.S. 591,
24 623 (1997) ("The Rule 23(b)(3) predominance inquiry tests whether
25 proposed classes are sufficiently cohesive to warrant
26 adjudication by representation.").  To determine whether common
27 questions predominate on either of plaintiff's claims, the court
28 must analyze the elements of those claims.

18

1          1.   <u>Predominance in Fraud Claim</u>

2          Plaintiff's fraud claim will likely be predominated by

3  individual issues rather than common questions of fact.   Although

4  the loan documents issued to class members were similar, as

5  previously explained, whether class members relied upon the loan

6  documents in question will be a critical issue in this action.

7  The class members likely had different conversations with their

8  mortgage brokers about OARM loans, had different levels of

9  experience with mortgage products, were explained the terms of

10 the loan differently by a notary at closing, and read the loan

11 documents to different degrees.   The extent of each class

12 member's reliance on the representations in the loan documents

13 will be critical to determine whether the reliance and causation

14 elements of the fraud claim are satisfied.   Therefore, the

15 individual issues of what each class member understood about

16 their loan terms and whether or not each class member relied on

17 those terms will likely predominate this litigation, rather than

18 common questions about the terms of the loan documents.   <u>See</u>

19 <u>Endres v. Wells Fargo Bank</u>, No. C 06-7019 PJH, 2008 WL 344204, at

20 *12 (N.D. Cal. Feb. 6, 2008) (denying class certification where

21 individual issues such as "whether and when a particular class

22 member heard of read the alleged misrepresentations (or Bank

23 disclosures)" predominated); <u>Mahfood v. QVC, Inc.</u>, No. SACV 06-

24 0659-AG, 2008 WL 5381088, at **4-5 (C.D. Cal. Sept. 22, 2008)

25 (finding that individual issues predominated where class members

26 heard and saw different misrepresentations by defendant); <u>Cohen</u>

27 <u>v. DIRECTV, Inc.</u>, 178 Cal. App. 4th 966, 979-80 (2009) (affirming

28 denial of class certification because determination of reliance

1  of causation depended on whether class members saw misleading

2  advertisements and therefor individualized factual issues

3  predominated).  Accordingly, plaintiff's fraud claim is not

4  appropriate for class certification under Rule 23(b).

5          2.  Predominance in UCL Claims

6          The portion of plaintiff's UCL claim that is based on

7  violations of TILA will also likely involve considerable

8  individual issues.  While plaintiff maintains that the alleged

9  violations of TILA were uniform across the class, the statute of

10  limitations issue will comprise a substantial portion of the

11  litigation.  If plaintiff's statute of limitations issues and

12  demand for equitable tolling are in fact typical of other class

13  members, then an individualized inquiry of when each class member

14  became aware of the TILA violations that are the subject of this

15  UCL claim would be necessary.  See King v. California, 784 F.2d

16  910, 914-15 (9th Cir. 1986).  While individualized inquiries do

17  not foreclose the possibility of predominance, whether the

18  statute of limitations may be equitably tolled for each class

19  member will be a highly individualized inquiry that will be

20  necessary before the court may even reach the merits of each

21  plaintiff's claim.  See, e.g., Block v. Major League Baseball, 65

22  Cal. App. 4th 538, 544-46 (1998).  Given the possibility that

23  this issue will predominate the proceedings, the court finds that

24  common factual issues predominate on plaintiff's "unlawful" UCL

25  claim.

26  ///

27  ///

28  ///

1          IT IS THEREFORE ORDERED that plaintiff's motion for

2     class certification be, and the same hereby is, DENIED.

3     DATED:  December 17, 2009

4

5                                                      _____

6                                    WILLIAM B. SHUBB

7                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21